## Ex parte Mauleón.

### Solicitud para que se expida mandamiento de Habeas Corpus.

No. 19.—Resuelto en Octubre 29, 1903.

Efectos de las Leyes Penales.—Es un principio general de derecho que el establecimiento de una nueva ley penal, que contenga una cláusula derogatoria, sin reserva alguna en sentido contrario, anula, deroga y deja sin efecto las leyes anteriores, hasta el extremo de que los delitos no comprendidos en la nueva ley, no podrían ser castigados ni los delincuentes sometidos á la acción de la justicia.

Códigos Penal y de Procedimiento.—Los nuevos Códigos Penal y de Enjuiciamiento Criminal forman parte integrante del mismo sistema y están íntimamente relacionados entre sí: el primero define el delito y fija su castigo, mientras que el segundo prescribe los métodos y procedimientos que han de seguirse para dar efecto á aquél.

Cláusula de Reserva.—El artículo 558 del Código Penal debe considerarse como cláusula de reserva y por lo tanto con respecto á todos los crímenes ó delitos cometidos con anterioridad al día 1 de Julio de 1902, los nuevos Códigos Penal y de Procedimiento no pueden ser aplicados.

Leyes de Procedimientos.—Aunque dos sistemas de enjuiciar no pueden existir en una Corte, al mismo tiempo, esto se entiende cuando ambos hayan de aplicarse á los mismos casos, pero no cuando el legislador hubiere declarado expresamente los casos á que uno ú otro deban aplicarse.

Lesiones.—Agresión.—El delito de lesiones no existe en el nuevo Código Penal y sería violento considerar que tiene la misma significación jurídica que el delito de agresión.

Habeas Corpus.—Apelación.—Recurso por Error.—En los casos en que un Tribunal tenga jurisdicción con respecto al delito y á la persona de un acusado, el procedimiento de *Habeas Corpus* no puede ser utilizado para corregir errores é irregularidades de procedimiento que han dado por resultado un veredicto de culpabilidad y una condena, siendo el *recurso por causa de error (writ of error)* ó la apelación, los únicos procedimientos adecuados en tales casos.

Juicio por Jurado.—Con arreglo á las secciones 388 y 389 de los Estatutos Revisados de Puerto Rico, el privilegio de ser juzgado por un jurado, se deja enteramente á la elección y voluntad del acusado, al que se exige que cumpla ciertos requisitos, ó de lo contrario se considerará que ha renunciado el derecho á ser juzgado por un jurado.

Los hechos están expresados en la opinión.

Abogado del peticionario: *Sr. Rossy (Manuel F.)*

Abogado del Pueblo: *Sr. del Toro, Fiscal.*

El Juez Asociado Sr. Sulzbacher emitió la siguiente opinión del Tribunal:

La presente es una solicitud de auto de habeas corpus

## Ex Parte Mauleón.

## Application for a writ of Habeas Corpus.

No. 19.—Decided October 29, 1903. (*)

Penal Code and Code of Criminal Procedure.—The new Penal Code and Code of Criminal Procedure are parts of the same system and closely related to each other. The former defines the crime and fixes the punishment; whilst the other outlines the manner, the course and the proceedings to prosecute and enforce the latter.

Saving Clause.—Section 558 of the Penal Code should be construed as a saving clause, and therefore the new Penal Code and Code of Criminal Procedure can not be applied to offenses committed prior to July 1, 1902.

Codes of Procedure.—Although two Codes of Procedure cannot exist in one court at the same time, this is true were the two procedures applicable to the same cases; but not when the legislature has expressly stated the cases to which either shall be applied.

Wounding.—Battery.—The crime of wounding (lesiones) is not designated in the new Penal Code, and it cannot properly be considered as having the same legal signification as the crime of battery.

Habeas Corpus.—Appeal.—Writ of Error.—The writ of habeas corpus cannot be used to review errors and irregularities in proceedings, resulting in conviction and sentence, where the court had jurisdiction of the offence and of the person of the defendant, a writ of error or appeal being the proper remedy in such case.

Jury Trial.—Right of Waiver.—Under Section 388 and 389 of the Revised Statutes of Porto Rico, the right of trial by jury is optional with a defendant, but in order to avail himself of such right, he must comply with certain conditions, otherwise the right is deemed to have been waived.

The facts are stated in the opinion.

Mr. Manuel F. Rossy, for petitioner.

Mr. del Toro, Fiscal, for the People.

Mr. Justice Sulzbacher delivered the following opinion of the court:

This is an application for a writ of habeas corpus by José Mauleón Castillo. In his petition he alleges, substantially, that on the 30th day of September, 1902, he was convicted

(*) The English and Spanish versions of this opinion both being signed copies, the discrepancies have been allowed to stand, and the language has not been changed.

presentada por José Mauleón Castillo. En dicho escrito se alega, sustancialmente, que el día 30 de Septiembre de 1902, Mauleón fué convicto por la Corte de Distrito de San Juan y condenado á la pena de un año y un día de prisión en la Penitenciaría y al pago de una indemnización de diez y nueve dollars, y á extinguir siete días más de prisión en caso que dejase de satisfacer la suma mencionada. Que apeló ante el Tribunal Supremo, el cual confirmó la sentencia de la Corte de Distrito el día 30 de Marzo de 1903. Alega que la sentencia de la Corte de Distrito es ilegal, fundándose en que en el citado día 30 de Septiembre de 1902, fecha de su condena, un nuevo sistema de Enjuiciamiento Criminal, que había empezado á regir el día 1 de Julio de 1902, se hallaba en vigor en Puerto Rico, disponiéndose por el mismo que toda acusación criminal debía ser instruida á nombre de "El Pueblo de Puerto Rico", ser jurada por el Fiscal y leida al acusado en su presencia, proporcionándosele así la oportunidad de contestar. Y que tratándose de un "delito grave", el acusado tenía derecho á ser juzgado por un jurado, de conformidad con los preceptos de la ley aprobada el 12 de Enero de 1901. Al hacerse la argumentación ante este Tribunal referente á la solicitud del presente "habeas corpus", se arguyó que las prescripciones del nuevo Código Penal que empezó á regir el 1 de Julio de 1902 eran también aplicables, y que Mauleón debió haber sido condenado por la ofensa de "battery" según lo prescribía dicho Código y no por el delito de lesiones de que trata el antíguo Código. De los autos de esta causa resulta que en el citado día 30 de Septiembre de 1902, Mauleón fué juzgado por el delito de lesiones cometido el 16 de Septiembre de 1901. Ninguno de los argumentos contenidos en la presente solicitud para la expedición de un auto de "habeas corpus" fueron aducidos por Mauleón al establecer su apelación ante este Tribunal. Por consiguiente, las cuestiones sometidas á la consideración de este Tribunal son las siguientes: Si los preceptos del nuevo Código Penal y los del nuevo Código de Enjuiciamiento Criminal son ó nó aplicables á una falta ó delito cometido con anterioridad al día 1 de Julio de 1902, y si un acusado tenía derecho á ser

in the District Court of San Juan, and sentenced to one year and one day of imprisonment in the penitentiary, and to pay an indemnity of nineteen dollars and suffer seven days more of imprisonment in case he should fail to pay the same. That he appealed to the Supreme Court, where on the 30th day of March, 1903, the judgment of the District Court was affirmed. He claims that said judgment of the District Court is illegal for the reason that on the 30th of September, 1902, the day of his conviction, there was in force in Porto Rico a new system of criminal procedure, which went into effect on the 1st day of July, 1902, wherein it was provided that all criminal accusations should be made in the name of the "People of Porto Rico" sworn to by the *Fiscal* and read to the defendant in his presence, to enable him to make his plea. That this being a case of (crime) "delito grave" the accused had a right to a trial by jury in conformity with a law enacted on January 12, 1901. During the argument before this court, on the application for the writ of *habeas corpus* it was contended that also the new Penal Code, which went into effect on July 1, 1902, was applicable and that Mauleón should have been punished for the offense of "battery" as provided by said new code and not for wounding (lesïones) under the former code.

It appears from all the records in this case that on said 30th day of September 1902, the said Mauleón was tried for the offense of wounding (*lesiones*) committed on the 16th of September, 1901. In the appeal before this court none of the points contained in the application for a writ of *habeas corpus*, were raised by said Mauleón. The questions now before this Court therefore are: whether or not the new Penal Code and the new Code of Criminal Procedure should be applied to an offense committed prior to the 1st day of July 1902; and whether a defendant, since the 12th day of January 1901, was entitled to a jury trial.

It is a general principle of law that a new criminal statute with a general repealing clause, but without any reservation,

juzgado por un Jurado después del 12 de Enero de 1901.

Es un principio general jurídico que el establecimiento de una nueva ley criminal (procesal) conteniendo una cláusula general derogativa, sin reserva alguna en sentido contrario, anulă, deroga y deja sin efecto las leyes anteriores, resultando que aquellos delitos que no existían en la nueva ley no podían ser castigados y que los malhechores evadirían la acción de la justicia. Teniendo en cuenta lo que precede, el legislador ha creido sabio y prudente durante los últimos años, evitar la evación de la Ley adoptando lo que se denomina "cláusula de reserva". El nuevo Código de Enjuiciamiento Criminal dice en su artículo 534:

"Que la Ley de Enjuiciamiento Criminal, Reales Decretos, Órdenes y Órdenes Militares, vigentes en Puerto Rico, en todo lo que se relacione ó refiera á Enjuiciamiento Criminal, incompatibles ó contrarias á esta ley, y demás leyes, órdenes, decretos y disposiciones incompatibles con la misma, quedan por la presente derogados. Esta Ley empezará á regir á las doce del día 1 de Julio de 1902".

El artículo 560 del Código Penal dice lo siguiente:

"El Código Penal, Reales Decretos, Órdenes y Órdenes Militares vigentes en Puerto Rico, en todo lo que se relacione ó refiera á delitos, y que fuesen incompatibles ó se opusieren á la presente y todas las demás leyes, órdenes, decretos y disposiciones incompatibles ó contrarias á la misma, quedan por la presente derogados.

Esta Ley empezará á regir el día 1 de Julio de 1902 á las doce del día."

En relación con lo que precede tenemos, sin embargo, que considerar el artículo 558 que dice como sigue:

"Ningún acto ú omisión que empezare después de medio día del día en que entre en vigor este Código, constituye delito penable, excepto en la forma prescrita ó autorizada por dicho Código.

Todo acto ú omisión que empezare antes de la promulgación de este Código, podrá investigarse, perseguirse y castigarse como si no se hubiere aprobado dicho Código."

Los tres artículos. mencionados deben desde luego ser interpretados conjuntamente.

No existe,. pues, duda alguna de que el nuevo Código Penal y la nueva Ley de Enjuiciamiento Criminal constituyen partes integrantes de un mismo sistema, y están íntimamente relacionados. Está generalmente admitido que el primero define el crímen y establece el castigo, mientras

to the contrary, annuls, abolishes and invalidates prior laws to the effect that crimes not contained in the new law could not be punished, and wrongdoers could not be brought to justice. From these experiences, the legislator, in recent years, has considered it wise and prudent to prevent the miscarriage of justice by enacting what is called a "saving clause".

The new code of Criminal Procedure says, in section 534:

"That the Penal Procedure, Royal decrees, orders and military orders in force in Porto Rico in so far as the same relate or refer to criminal procedure, and are inconsistent or in conflict herewith, and all other laws, orders, decrees and acts inconsistent with this Act, are hereby repealed".

"This Act shall take effect at 12 o'clock noon on the first day of July, nineteen hundred and two".

The Penal Code, in its section 560 reads as follows:

"Section 560.—The Penal Code, Royal Decrees, Orders and Military Orders in force in Porto Rico, in so far as the same relate or refer to crimes and are inconsistent or in conflict herewith, and all other laws, orders, decrees and acts inconsistent or in conflict with this Code, are hereby repealed".

"This Code shall take effect at 12 o'clock noon on the 1st day of July, nineteen hundred and two".

In this connection, however, we have to consider section 558 which is as follows:

"Section 558.—No act or omission commenced after twelve o'clock noon, of the day on which this code takes effect as a law, is criminal or punishable, except as prescribed or authorized by this Code".

"Any act or omission commenced prior to the establishment of this Code, may be inquired of, prosecuted and punished in the same manner as if this Code had not been passed".

These three sections must naturally be construed together.

There is no doubt that the new Penal Code and the new Code of Criminal Procedure are parts of the same system and closely related to each other. As universally recognized, the former defines the crime and fixes the punishment, whilst the other outlines the manner the course and the proceedings to prosecute and enforce the latter. It is evident to this court that it was the intention of the legislature that

que la segunda prescribe la forma, el método y los procedimientos que deben seguirse para el cumplimiento de la misma. A este Tribunal no le cabe duda de que fué la intención de la Legislatura el que el artículo 558 se considerase como una "cláusula de reserva", toda vez que en ella se expresa en términos positivos é inequívocos que todo acto ú omisión cometido con anterioridad á la aprobación del Código "podrá investigarse, perseguirse y castigarse como si no se hubiera aprobado este Código." Por consiguiente, los preceptos del nuevo Código Penal y de Enjuiciamiento Criminal no podían aplicarse á todos los delitos ó faltas cometidos antes del día 1 de Julio de 1902, y dichas leyes habían de considerarse como si no hubieran existido absolutamente.

Se arguye que no pueden existir dos sistemas de enjuiciamiento en una Corte al mismo tiempo. Esto podría admitirse si los dos sistemas de enjuiciamiento fueran aplicables á los mismos casos. Confusiones tendrían necesariamente que desarrollarse entonces. El legislador tuvo en cuenta dichas confusiones y las obvió declarando que el nuevo Código debía solo aplicarse á delitos ó faltas cometidos después del 1 de Julio de 1902. Hay casos en los Estados Unidos que prueban la existencia de dos sistemas de enjuiciamiento al mismo tiempo. Por ejemplo, en aquellos Estados ó Territorios en que el procedimiento de la "ley común" fué sustituído por un enjuiciamiento de Código, la legislatura dispuso que todas las causas pendientes anteriores á la fecha en que el Código empezó á regir debían ser tramitadas de acuerdo con el sistema antíguo. Allí, como aquí, existían dos sistemas de enjuiciamiento en la misma Corte, y sinembargo no se oponían el uno al otro, puesto que no eran aplicables á los mismos casos.

El solicitante fué acusado y convicto del delito de lesiones. En el nuevo Código Penal no existe semejante delito especial. Sustituir agresión (battery) por lesiones, según se ha indicado, sería forzado. Pero aún en el supuesto de que existiera, la Legislatura, á fin de disipar cualquiera duda adoptó la "cláusula de reserva", por medio de la cual todas las ofensas cometidas con anterioridad al 1 de Julio de 1902,

section 558 should be considered as a saving clause, for it states in most positive and unequivocal terms that any act or omission comenced prior to the establishment of the code "shall be inquired of, prosecuted and punished in the same manner as if this code had never been passed". Hence, as to all crimes or offenses committed prior to the 1st day of July, 1902, the new Penal Code and the Procedure could not be applied but had to be considered as if they were not in existence at all.

It is contended that two codes of procedure cannot exist in one court at the same time. This is true were the two procedures applicable to the same cases. Confusions would then naturally arise. Such conditions the legislator had in mind and he obviated them by declaring that the new code should only be applicable to crimes or offenses committed after July 1, 1902. There are instances in the United States where two procedures existed contemporaneously. For instance, in states or territories where the common law pleading was superseded by a Code practice the Legislature provided that all cases pending prior to the time when the code would go into effect should be prosecuted and carried on under the old system. There, like here, two procedures existed in the same court and yet one did not interfere with the other; they not being applicable to the same cases.

The applicant was charged and convicted of the crime of wounding (*lesiones*). There is no such offense designated in the new Penal Code as defined by the former Code. But even if it were otherwise, the legislature, to avoid all doubt proclaimed its reservation by enacting the said saving clause under which all offenses committed prior to July 1, 1902, should be "inquired of, prosecuted and punished" in accordance with the law and the procedure of the old penal system and irrespective of the new criminal legislation. The crime of wounding (*lesiones*) was committed in September, 1901, and the former system of criminal law was properly applied.

habían de ser "investigadas, perseguidas y castigadas, de acuerdo con la ley y el enjuiciamiento del sistema penal antíguo, sin tener presente la nueva legislación criminal. El delito de lesiones se cometió en el mes de Septiembre de 1901, y el antíguo sistema de enjuiciamiento criminal fué propiamente aplicado.

Pero aún concediendo que el acusado pudiera haber hecho uso de las prescripciones de la nueva ley de enjuiciamiento criminal, y por lo cual se le privó del derecho de defenderse, lo que infringió de modo fatal sus derechos y su libertad, ha dejado el solicitante de probar en absoluto la forma en que ha sido perjudicado por la aplicación de la antígua ley de enjuiciamiento criminal, y como hubiera la nueva ley mejorado su causa.

En relación con la presente solicitud, no estaría demás hacer constar aquí que los Tribunales mas altos de los Estados Unidos han declarardo que no puede expedirse un auto de habeas corpus para la revision de errores é irregularidades en el procédimiento, dando por resultado la convicción y condena, siempre que la Corte tenga jurisdicción sobre la ofensa y el acusado: Un auto de error ó apelación son los únicos recursos en tales casos.

En *Ex Parte Schaw* 7 Ohio State, 81, "70 American Decisions" la Corte dice:

"La Corte tenía jurisdicción sobre la ofensa y su castigo. Tenía autoridad para dictar su sentencia y aun cuando al hacer uso de sus legítimos poderes cometió un error manifiesto en el número de años impuestos, la sentencia no era nula, sino errónea".

"El auto de error y de *habeas corpus* tienen su misión distinta. Existen amplios recursos para la corrección de irregularidades y errores en los procedimientos ,que resultan de la convicción y sentencia por medio de un "auto de error". Para subsanar errores é irregularidades en semejantes casos no puede hacerse uso del recurso sumario del auto de *habeas corpus;* pero si la Corte ha sentenciado al solicitante por un delito sobre el cual no tenía jurisdicción alguna de acuerdo con la ley, los procedimientos y la sentencia eran abiertamente *coram non judice,* y nulos. La prisión que se decrete en virtud de esta sentencia nula, sería ilegal, y el peticionario tendría derecho á que se le excarcelara mediante auto de *Habeas Corpus.*

La Corte Suprema de los Estados Unidos, *In Re Frederick* 149 U. S. página 7, dice:

But even granting that a defendant could avail himself of such provisions of a new criminal procedure which may. result to his benefit or advantage, and whereby he was deprived of a defense which fatally affected his rights and liberty, the applicant has absolutely failed to show how he has been injured or prejudiced by the old criminal procedure, and how the new law would have ameliorated his condition.

The highest courts in the United States have held that a writ of *habeas corpus* cannot be used to review errors and irregularities in proceedings resulting in conviction and sentence where the court has jurisdiction of the offense and of the person of the defendant. A writ of error or appeal alone are the proper remedies in such cases.

In *Ex Parte Schaw*, 7 Ohio State, 81, "70 American Decisions", the court says:

"The court had jurisdiction over the offense and its punishment. It had authority to pronounce sentence; and while in the legitimate exercise of its power committed a manifest error and mistake in the award of the number of years of punishment, the sentence was not void but erroneous".

"The writ of error and *habeas corpus* each have their separate offices. There are ample remedies provided for the correction of irregularities and errors in proceedings which result in conviction and in sentences by writ of error. For errors and irregularities in such cases, the summary remedy by *habeas corpus* cannot be had; *Ex Parte Kellogg*, 6 Vt. 509; *Matter of Prime*, 1 Barb 340. But if the court has sentenced the relator for an offence over which, by law, it had no jurisdiction whatever, so that the proceedings and sentence were manifestly *coram non judice*, and void, the imprisonment following such void sentence would have been unlawful, and the relator entitled to be discharged on *habeas corpus; Cropper v. Commonwealth*, 2 Rob. (Va.) 842; *Ex Parte Watkins*, 3 Pet. 202".

The Supreme Court of the United States *In Re Frederick*, 149, U. S. 76, says:

"The office of a writ of *habeas corpus* and the cases in which it will generally be awarded was clearly stated by Mr. Justice Bradley speaking for the court in *Ex Parte Siebold*, 100 U. S. 371, 375, as follows: "The only ground on which this court, or any court without some special statute authorizing it, will give relief on *habeas corpus* to a prisoner under conviction and

"*In Re Frederick:* 149 E. E. U. U. 76.

"El objeto de un auto de *Habeas Corpus,* y los casos en que generalmente es concedido han sido claramente expresados por el Magistrado Sr. Bradley, que habló á nombre del Tribunal en la causa de Ex Parte Siebold, 100, E. E. U. U. 371, 375, como sigue: "El único motivo por el cual este Tribunal ó cualquier otro Tribunal, sin alguna ley especial que lo autorice, intervendrá al presentarse una solicitud de *Habeas Corpus* á favor de un preso que se halla convicto y sentenciado por otro Tribunal, es la falta de jurisdicción del Tribunal sentenciador sobre la persona ó la causa ó algún otro motivo que determine la nulidad de sus procedimientos. Esta distinción entre una sentencia errónea y otra que es ilegal y nula, está bien demostrada por las dos causas de Ex Parte Lange, 18 Wall 163, y Ex Parte Parks 93 U. S. 18. En el primer caso declaramos que la sentencia era nula y de consiguiente pusimos en libertad al suplicante: en el último caso declaramos que la sentencia, fuera ó nó errónea, no era nula, porque el Tribunal era competente para conocer de la causa; y nosotros nos negamos á inmiscuirnos en la misma". La razón para esta regla está en el hecho de que un procedimiento de *habeas corpus* es un ataque colateral de naturaleza civil para recusar la validez de un fallo ó sentencia de otro Tribunal en un procedimiento criminal, y por lo tanto debería limitarse á los casos en que el fallo ó la sentencia recusada sea claramente nula por la razón de haber sido dictada sin jurisdicción (ó competencia), ó por el motivo de que el Tribunal haya extralimitado su jurisdicción en el asunto".

*Ex Parte Parks:* 93 E. E. U. U. página 23:

"Pero en el caso que nos ocupa, el Tribunal de Distrito tenía plena jurisdicción tanto sobre la persona como sobre el lugar, la causa y todo aquello que con ella se relacionaba. El revisar la sentencia de aquél Tribunal mediante un auto de *Habeas Corpus* sería convertir ese auto en un simple recurso de apelación, y asumir un poder de apelación que nunca ha sido conferido á este Tribunal".

En el presente caso, la Corte de distrito tenía jurisdicción sobre la ofensa y sobre el acusado Mauleón y si se cometió algún error debió haberse tratado de corregir en su apelación ante el Tribunal Supremo. Es, sin embargo, la opinión de este Tribunal que no se cometió error alguno. Las manifestaciones anteriores dan por terminado el caso, á pesar de lo cual consideraremos brevemente la objeción que se hace respecto á un juicio por Jurado, llamando la atención hácia los artículos 388 y 389 de los Estatutos revisados que dicen lo siguiente:

"Si una persona es acusada por el Fiscal ó por el Gran Jurado de un delito que tenga señalada como castigo pena capital ó dos ó mas años de privación de libertad en cualquier establecimiento penal de la isla, podrá exigir

sentence of another court is the want of jurisdiction in such court over the person or the cause, or some other matter rendering its proceedings void. This distinction between an erroneous judgment and one that is illegal or void is well illustrated by the two cases of *Ex Parte Lange*, 18 Wal. 163, and *Ex Parte Parks* 93 U. S. 18. In the former case we held that the judgment was void, and released the prisoner accordingly; in the latter we held that the judgment, whether erroneous or not, was not void because the court had jurisdiction of the cause, and we refused to interfere". The reason of this rule lies in the fact that a *habeas corpus* proceeding is a collateral attack of a civil nature to impeach the validity of judgment or sentence of another court in a criminal proceeding, and it should, therefore, be limited to cases in which the judgment or sentence attacked is clearly void by reason of its having been rendered without jurisdiction, or by reason of the court's having exceeded its jurisdiction in the premises". *Ex Parte Parkes:* U. S. page 23.

"But in the case before us, the District Court had plenary jurisdiction, both of the person, the place, the cause and everything about it. To review the decision of that court by means of the writ of *habeas corpus* would be to convert that writ into a mere writ of error, and to assume an appellate power which has never been conferred upon this court".

In the case before this court the District Court had jurisdiction of the offense and over the defendant Mauleón, and if any error had been committed it should have been raised by his appeal to the Supreme Court. It is however, the opinion of this court that no error has been committed.

These expressions dispose of the case; nevertheless, we shall briefly consider the other objection raised in reference to the trial by jury and call attention to sections 388 and 389 of the Revised Statutes which read:

"If any person is charged with a crime by a prosecuting attorney or by a grand jury, the punishment for which is capital punishment or two years or more confinement in any penal institution of the island, he may demand a trial by jury only in the district court having jurisdiction, and it shall be granted him under the following provisions".

"Any person so charged shall, if he elect to have a jury announce such election to the court, through his counsel, or by his own statement; such election shall be made at least two days before the day set for the trial for the crime with which he is charged; and if not made before that time, he

que le juzgue un Jurado, solo en el Tribunal de Distrito que sea competente, lo que se concederá bajo las siguientes condiciones.

"Toda persona así acusada, que opte por someterse á un Jurado, anunciará su opción al Tribunal, por conducto de su abogado, ó manifestándola personalmente; dicha opción tendrá lugar por lo menos dos días antes del fijado para la vista de la causa por el delito de que se le acusa; y si no se hiciese antes de ese término se considerará á dicha persona como si hubiese renunciado á su derecho á Juicio por Jurados, en cuyo caso será juzgada por el Tribunal".

Es evidente que de acuerdo con los preceptos de dichos artículos, el privilegio de un Juicio por Jurado resta enteramente con el acusado siendo opcional con el mismo. De conformidad con los artículos citados se exige al acusado que cumpla con ciertos requisitos, considerando en caso contrario que ha renunciado el privilegio de ser juzgado por un Jurado. No parece que el solicitante de este auto de *Habeas Corpus*, al verificarse el juicio oral en la Carte de Distrito solicitara un Jurado ni que su petición fuere denegada, y no tiene por consiguiente *á priori* derecho para quejarse.

La solicitud de auto de *habeas corpus* es por lo tanto denegada, el auto desechado.

*Denegada.*

Jueces concurrentes, Sres. Presidente, Quiñones y Asociados, Hernandez, Figueras y MacLeary.

————————

*Opinión concurrente del Juez Asociado Sr. MacLeary.*

Con fecha 30 de Septiembre de 1902, José Mauleón, peticionario en este caso, fué declarado culpable por la Corte de Distrito de San Juan del delito de lesiones cometido en la persona de un tal Genaro Cruz, en la ciudad de San Juan, Puerto Rico, el día 10 de Diciembre de 1901. Fué condenado á un año y un día de prisión, y accesoria, debiendo sufrir aquélla en la penitenciaría. Apeló su causa para ante este Tribunal, y habiéndose considerado debidamente la misma, la sentencia fué confirmada en todas sus partes con fecha 30 de Marzo de 1903.

Los fundamentos del recurso de apelación, brevemente expuestos, son los siguientes: Que la prueba no era de suficiente naturaleza para determinar la identidad del apelante

shall be deemed to have waived the right to trial by jury, in which case he shall be tried by the court".

It is obvious that under this statute the privilege of a trial by jury is left entirely with the defendant and at his option and election. The defendant under said law is required to comply with certain requirements, otherwise he is deemed to have waived the right of trial by jury. It does not appear that the applicant for the writ of *habeas corpus*, at the trial in the district court, demanded a jury, and that a jury was denied; and he is therefore *a priori* not in a position to complain.

The application for the writ of *habeas corpus* is therefore denied, the writ dismissed and the prisoner to be remanded.

*Concurrent opinion of Mr. Justice MacLeary.*

The applicant José Mauleón was convicted in the District Court of San Juan, on the 30th day of September, 1902, of wounding (*lesiones*) a certain Genaro Cruz, in the city of San Juan, Porto Rico, on the 10th day of December, 1901. He was sentenced to one year and one day of imprisonment in the Penitentiary and accessory penalties. He appealed his case to this court, and the same was carefully considered, and on the 30th day of March, 1903, the judgment was in all things affirmed.

The grounds relied on in the appeal were briefly as follows: That the proof was not sufficiently certain to identify the appellant as one of the assailants of the wounded man, nor could it be definitely determined which one of the accused inflicted the blows, but that the affair occurred during a riot, and that the defendant should have been convicted, if at all, under another section of the same penal code, the

como uno de los que asaltaron al lesionado, ni pudo determinarse definitivamente cuál de los acusados infirió los golpes, habiendo ocurrido el incidente durante una revuelta, y que si el acusado era culpable, debió habérsele declarado convicto de acuerdo con otro artículo del mismo Código Penal, ó sea el antíguo, y no bajo el artículo que el Tribunal inferior aplicó á los hechos de su causa. El acusado fué muy bien defendido ante el Tribunal Supremo por uno de los principales miembros del foro puertorriqueño.

Durante el curso de su apelación no se alegó que había sido privado de un jurado, ni se alegó tampoco que el juicio debió haberse celebrado de acuerdo con las disposiciones del nuevo Código de enjuiciar. Después de haber sufrido seis meses de prisión en la penitenciaría, presentó esta solicitud de habeas corpus, alegando como fundamentos de la misma que se le había denegado un juicio por jurado, y que fué juzgado de acuerdo con las disposiciones del antíguo Código de Enjuiciamiento Criminal, que no estaba vigente en la época en que tuvo lugar la celebración del juicio.

El primer fundamento consiste en que se le denegó un juicio por jurado. Este derecho no lo concedía el nuevo Código de enjuiciar, toda vez que la ley de juicios por jurados fué aprobada en Enero de 1901, meses antes de la comisión del delito del cual fué declarado culpable el prisionero. Si tenía derecho á un juicio por jurado, ese derecho le estaba asegurado por la primera ley pasada por la Legislatura de Puerto Rico, y aprobada mucho antes de que cometiera el acometimiento contra Genaro Cruz. No es necesario invocar la protección del nuevo Código de Enjuiciamiento Criminal para reclamar este derecho. Es absolutamente innecesario entrar en los límites de una discusión sobre los códigos. El derecho á un juicio por jurado, de acuerdo con la ley que establece este derecho en favor de todos los puertorriqueños, no es, sin embargo, absoluto; está sujeto á muchas restricciones. El acusado debe pedir el jurado de acuerdo con determinadas prescripciones, algunos días antes del juicio, y si deja de solicitarlo, se considera que ha renunciado su derecho. Los autos del caso, que vinieron anteriormente ante este Tribunal por virtud de la

former one, instead of under the section which the trial court applied to the facts of his case. He was ably defended in the Supreme Court by one of the leading members of the Porto Rican Bar.

Neither the claim that he had been deprived of a jury nor that the new code of procedure should have been followed in his trial was advanced in the course of this appeal. After serving six months of his term in the penitentiary he made this application for *habeas corpus*, alleging as the grounds of it that he had been denied a jury trial, and that he was tried under the old Code of Criminal Procedure which was not in force at the time his trial took place.

The first complaint is that he was denied a trial by jury.

This right did not depend on the new code of procedure, because the jury law was passed in January, 1901, months prior to the commission of the crime of which the prisoner was convicted. If he was entitled to a jury trial that right was secured to him by the first act ever passed by the Legislature of Porto Rico, and approved long before the assault on Genaro Cruz was committed. It is not necessary to claim the protection of the new code of criminal procedure to assert this right. This claim lies wholly beyond the limits of the discussion on the codes. But the right to a jury trial under the law securing the right to all Porto Ricans is not absolute; it is subject to many restrictions. The accused must demand the jury in a certain prescribed manner, several days before the trial, and if he fails to demand it his right is deemed to be waived. The record of the case, which formerly came before this court on appeal, would show that a jury was never demanded. But it must affirmatively appear in this proceeding on *habeas corpus* that the applicant had been deprived of his right, after having taken all the measures necessary to secure it. Such a position is not assumed and could not be maintained. Then the claim of his right to a jury trial has no sufficient basis to entitle it to our consideration.

apelación, prueban que nunca se solicitó el juicio por jurado. Pero en este procedimiento de habeas corpus debe aparecer de modo afirmativo que el solicitante fué privado de su derecho después de haber tomado las medidas necesarias para obtenerlo. Semejante alegación no se ha hecho, ni podría sostenerse. Por consiguiente, la reclamación que hace de su derecho á un juicio por jurado no tiene suficiente fundamento para hacerla acreedora á nuestra consideración.

Es un hecho que este juicio fué tramitado ante la Corte de Distrito, y ante este Tribunal, en apelación, de acuerdo con las disposiciones del antíguo Código de Enjuiciamiento Criminal, que estaba vigente en los días de la dominación española, y que continuó en vigor por virtud de la ley Foraker, habiendo procedido ambas Cortes bajo la teoría de que ni el nuevo Código Penal, ni el Código de Enjuiciamiento Criminal moderno, pasados y aprobados en 1 de Marzo de 1902, tenían aplicación alguna á aquellos casos en que los hechos hubieran ocurrido con anterioridad al 1 de Julio de aquél año.

Y de aquí se sigue que la cuestión presentada en este caso es completamente nueva. Se alega que el nuevo Código de Enjuiciamiento Criminal debió seguirse en el juicio de este caso y en el de todas las otras causas criminales, háyanse cometido los hechos constitutivos de delito con anterioridad ó posterioridad á las doce del día del 1 de Julio de 1902.

En otras palabras, se sostuvo en la discusión que el nuevo Código de Enjuiciamiento Criminal empezó á regir, según sus propios términos, en la fecha arriba mencionada, y era de aplicarse desde entonces á todas las causas pendientes, cualquiera que fuera el estado á que hubieran llegado en su tramitación en aquel día y dora. Si los jueces de las Cortes de Distrito hubieran estado celebrando el juicio de una causa, y la prueba hubiera estado en período de presentación, ó si los argumentos estuvieran á mitad de su terminación, al dar las doce del día 1 de Julio, inmediatamente debía cambiarse todo el procedimiento de la causa, como se cambian las vistas en una linterna mágica, y aun cuando el procedimiento hubiera comenzado de acuerdo con el antíguo

In point of fact this trial, both in the District Court and in this Court on appeal, was conducted under the old Code of Criminal Procedure, which was in force in the days of the Spanish domination, and which had been continued in operation by the Foraker Act, both courts proceeding on the theory that neither·the new Penal Code nor the new Code of Criminal Procedure, passed and approved on the 1st of March, 1902, had any application to cases in which the acts occurred prior to the 1st of July of that year.

Hence it is that quite a novel question is presented in this case. It is contended that the new Code of Criminal Procedure should govern in the trial of this and all other criminal cases, whether the acts constituting the offenses were committed prior to 12 o'clock noon on the 1st day of July, 1902, or thereafter.

In other words, it is maintained in argument that the new Code of Criminal Procedure went into effect, according to its terms, at the date above mentioned, and thereafter was to be applied in all pending cases, no matter at what state of their progress they might have arrived, at that day and hour. Should the judges of the District Court have been sitting in the trial of a case, and the evidence have been in process of introduction, or the argument have been half finished, when twelve o'clok struck at noon on the 1st day of July, immediately the whole procedure in the case should have changed like the views in a magic lantern, and although commenced according to the old code of procedure, the prosecution must have been finished in accordance with the new.

Let us examine this position, and see on what foundation it rests. In order to do so it is necessary briefly to review the history of this island since the American occupation. This we are fully authorized to do in this connection by the authorities on statutory construction.

We wish to ascertain the intention of the legislature in regard to the subject. Matters of public history and the

código de enjuiciar, debía haberse terminado de acuerdo con el nuevo código.

Examinemos este argumento, y veamos en qué fundamentos descansa. Para hacer esto, es necesario hacer una breve reseña de la historia de esta Isla desde la ocupación americana. Las autoridades en materia de interpretación estatutaria nos autorizan á seguir este proceder en relación con ésta discusión.

Deseamos determinar cual fuera la intención de la legislatura con respecto á este particular. Las cuestiones referentes á la historia y las circunstancias que concurrieran en la época de la aprobación de la ley que se esté interpretando, pueden siempre tomarse en consideración por los Tribunales, cuando tratan de llegar á la intención de la Legislatura al aprobar las leyes. *Church of H. T. v. United States*, 143 U. S. 457. *Siemans v. Sellers* 123 U. S. 276. *United States v. U. P. R. Co.* 91 U. S. 72. *Aldrige v. Williams* 3 *How.* 8.

Echemos, por consiguiente, una ojeada á los hechos ocurridos algunos años atrás. Cuando empezó la invasión, el día 25 de Julio de 1898, este pueblo se encontraba viviendo bajo un Código de leyes que era el resultado final del progreso durante edades, y estaba profundamente arraigado en un sistema de jurisprudencia que le había sido concedido durante una docena de generaciones, desde el descubrimiento de América, y á sus antecesores, en España, por unos mil años con anterioridad á ese descubrimiento; un sistema que se derivaba del derecho romano, que ha estado en práctica en la península, por siglos, y traído desde allí, á esta colonia, por los primeros pobladores.

Desde luego, con el advenimiento de los americanos, vinieron ideas distintas y el derecho vigente en los Estados Unidos, según surgiera de las instituciones Anglo-sajonas, basado en el derecho común de Inglaterra, fué puesto en inmediato contacto con el derecho español, que regía en Puerto Rico. Mas no se verificaron cambios inmediatos hasta que tuvo lugar el establecimiento del Gobierno Civil, en el año 1900 por virtud de la ley Foraker, á excepción de aquellos ligeros cambios, pero necesarios, que se encuentran en las órdenes militares.

surrounding circumstances at the time of the passage of the act under construction can always be considered by the court in arriving at the intention of the legislature, in enacting the laws. *Church of H. T. v. United States*, 143 U. S. 457. *Siemans v. Sellers*, 123 U. S. 276. *United States v. U. P. R. R. Co.*, 91 U. S. 72. *Aldrige v. Williams*, 3 How 8.

Then let us glance a few years backward. When the invasion began, on the 25th of July, 1898, this people were found to be living under a code of laws which was the final outgrowth of ages, and was rooted deep in a system of jurisprudence which had been handed down to them through a dozen generations, since the discovery of America, and to their ancestors in Spain for a thousand years previous thereto; a system derived from the Roman Law, which had been practiced in the Peninsula for centuries, and brought thence by the early settlers to this colony.

Of course with the advent of the Americans different ideas were introduced and the law of the United States, as it had grown up under Anglo-Saxon institutions, based on the common law of England was brought into immediate contact with the Spanish law as it existed in Porto Rico. But no immediate changes were made, further than those slight but necessary ones to be found in the Military Orders, until after the establishment of Civil Government in 1900 under the Foraker Act.

A Commission to revise and codify the laws of Porto Rico, presumably along American lines, was provided for in that Act of Congress, and was appointed, and labored more or less for a year in that direction. Their report was made to the Government at Washington, and laid before Congress, but no practical results ever ensued.

It is eminently proper to consider in this connection the state of statutory affairs existing in this island at the time these codes were proposed and passed by the Legislative Assembly as shedding light on the purpose, object and inten-

Por virtud de esa Ley del Congreso se dispuso la creación de una Comisión que revisara y codificara las leyes de Puerto Rico, presumiéndose que esto habría de hacerse en armonía con los sistemas americanos, Comisión que fué nombrada, y trabajó en ese sentido por espacio de un año, más ó menos. Se presentó su informe al Gobierno de Washington, y se sometió al Congreso, pero no se siguió resultado práctico alguno.

Es completamente propio que, en relación con esta discusión, tomemos en consideración el estado de·la legislación vigente en esta Isla en la época en que estos códigos fueron propuestos y aprobados por la Asamblea Legislativa, porque ello contribuye á esclarecer el fin, objeto é intención que guiara al poder legislativo. *Ross ex parte*, 140, U. S. 453. *Platt v. U. P. R. Co.*, 99, U. S. 48.

Procedamos, por consiguiente, en la forma indicada. Cuando se reunió la primera Asamblea Legislativa de Puerto Rico, en Enero de 1901, de acuerdo con la ley Foraker, se nombró una nueva comisión codificadora, de acuerdo con una ley aprobada por ese cuerpo, cuya comisión se componía de algunos de los mismos miembros que constituyeron la anterior, y esa comisión preparó y sometió, un año más tarde, á la consideración de la Asamblea Legislativa, varios códigos, que intitularon Código Político, Código Civil, Código Penal y Código de Enjuiciamiento Criminal, todos los cuales fueron adoptados por la Legislatura, y á su debido tiempo se convirtieron en leyes de Puerto Rico. El Código Penal y el Código de Enjuiciamiento Criminal fueron formulados siguiendo como modelo el Código Criminal de California, y en verdad, en muchos artículos y capítulos, parecen ser una copia exacta de aquella ley. Había una diferencia, sin embargo, y era la siguiente: Por razón de conveniencia, según se expresa en el informe que diera la comisión, el Código Penal de California, que comprende, en una sola ley, tres partes, que tratan respectivamente de los delitos y castigos, del procedimiento criminal y de las prisiones ó cárceles, fué dividido en dos códigos, que se denominaron, el Código Penal y el Código de Enjuiciamiento Criminal, siguiendo el método á que el pueblo

tion of the law-making power. *Ross Ex Parte*, 140 U. S. 453. *Platt v. U. P. R. Co.*, 99 U. S. 48.

Then let us do so. When, in January, 1901, the first Legislative Assembly of Porto Rico had been convened, under the Foraker Law, a new codifying Commission was appointed, under a statute passed by that body, which was composed of some of the same members as the former, and they prepared and a year later submitted to the Legislative Assembly several codes, which they styled a political code, a civil code, a penal code, and a code of criminal procedure, all of which were adopted by the Legislature, and in due time became the law in Porto Rico. The Penal Code, and Code of Criminal Procedure were modeled on the California Criminal Code, in fact, in many sections and chapters appear to be an exact copy of that law. There was a difference, however, in this; for the sake of convenience, as is stated in the report of the Commission, the Penal Code of California, which embraces in one act three parts, treating respectively of crimes and punishments, of criminal procedure, and of prisons, was divided into two codes, called the Penal Code, and the Code of Criminal Procedure, according to the method to which the people were accustomed, having been formerly in use under the Spanish Government, in which the criminal laws had those designations.

Both of these codes, by their terms, took effect at twelve o'clock noon, on the 1st day of July, 1902. The Penal Code provides, in its second section that no part of it shall be retroactive unless expressly so declared, and it also has a section, among the final provisions, reading as follows:

"Section 558.—No act or omission commenced after twelve o'clock noon, of the day on which this code takes effect as a law is criminal or punishable, except as prescribed or authorized by this Code".

"Any act or omission commenced prior to the establishment of this Code may be inquired of, prosecuted and punished in the same manner as if this Code had not been passed".

estaba acostumbrado antiguamente, bajo la soberanía de España, cuando las leyes penales tenían aquellas denominaciones.

Ambos Códigos mencionados, según sus disposiciones, empezaron á regir á las doce del día del primero de Julio de 1902. El Código Penal prescribe, en su segundo artículo, que ninguna parte del mismo tendrá carácter retroactivo, á no ser que se declare así expresamente, y tiene también otro artículo, entre sus disposiciones finales, que dice así:

Artículo 558. Ningún acto ú omisión que empezare después de medio día del día en que entre en vigor este Código, constituye delito penable, excepto en la forma prescrita ó autorizada por dicho Código.

Todo acto ú omisión que empezare antes de la promulgación de este Código, podrá investigarse, perseguirse y castigarse como si no se hubiera aprobado dicho Código.

Estas disposiciones del Código Penal no se encuentran en el Código de Enjuiciamiento Criminal. Cada uno de estos códigos tiene una cláusula derogatoria que dispone, en un caso "Que la Ley de Enjuiciamiento Criminal, Reales Decretos, Órdenes y Órdenes Militares, vigentes en Puerto Rico, en todo lo que se relacione ó refiera á enjuiciamiento criminal, incompatibles ó contrarias á esta Ley, y demás leyes, órdenes, decretos y disposiciones, incompatibles con la misma, quedan por la presente derogadas", y en el otro caso, empleando términos semejantes, sustituyendo las palabras "Enjuiciamiento Criminal" por "Código Penal" y "Delitos".

Nunca ha surgido cuestión alguna con respecto al efecto de ambos Códigos expresados en relación con hechos ó delitos cometidos después de las doce del día del primero de Julio de 1902. Todo el mundo conviene en que estas leyes eran aplicables á tales actos, y que todos los delitos cometidos con posterioridad á esa fecha deben ser juzgados y castigados de acuerdo con las mismas. No se se sostiene tampoco que el nuevo Código Penal tenga aplicación á hechos ó delitos cometidos con anterioridad á las doce del día del primero de Julio. Todos han considerado que sus efectos son sólo posteriores á aquel día y hora.

La única cuestión aquí planteada se refiere á la aplicación del Código de Enjuiciamiento Criminal á hechos y delitos

These provisions of the Penal Code do not appear in the Code of Criminal Procedure. Each of the Codes has a repealing clause providing in the one case: "That the Penal Procedure, Royal Decrees and Orders, and Military Orders in force in Porto Rico, in so far as the same relate or refer to criminal procedure, and are inconsistent or in conflict therewith, and all other laws, or orders, decrees or acts inconsistent with this code are hereby repealed", and in the other, using similar language, changing the words "penal procedure" to "penal code" and "criminal procedure" to "crimes".

No question has ever been raised as to the effect of either or both of these codes on acts or offenses committed after twelve o'clock noon on the 1st day of July, 1902. Everybody agrees that these laws were intended to apply to such acts, and that all offenses subsequent to that date must be tried and punished in accordance therewith. Nor is it contended that the new Penal Code applies to acts or offenses done or committed prior to the noon hour on the 1st of July. All parties consider it to be entirely prospective in its operation.

The only question arising here is as to the application of the Code of Criminal Procedure to acts done and offenses committed prior to noon on the 1st day of July 1902, and which had not yet been punished at that date. It has been frequently held by the highest courts that great respect is due to official usage and to the contemporary construction put upon statutes by the executive officers charged with their execution, especially where this construction has been acquiesced in for a long period of time, and that these are among the legitimate aids to the courts in the interpretation of statutes. *United States v. Healy*, 160 U. S. 136; *People v. Dayton*, 55 N. Y. 377; *Wetmore v. State*, 55 Ala. 198; *United States v. A. G. S. R. R. Co.*, 142 U. S. 615; *United States v. Stone*, 124 U. S. 236. And in a lesser degree, of course, the same might be held where the construction or the usage has prevailed for only a comparatively short time. It is then worthy of remark that the Attorney-General who at that

cometidos con anterioridad á las doce del día del primero de Julio de 1902, y los cuales no hubieran sido castigados en aquella fecha. Los más altos Tribunales han sostenido, con frecuencia, que las costumbres oficiales y la interpretación contemporánea que los funcionarios ejecutivos den á las leyes cuyo cumplimiento les esté encomendado, merecen gran respeto, especialmente en aquellos casos en que tal interpretación haya sido consentida por un largo período de tiempo, siendo éste un auxilio legítimo á que pueden recurrir los Tribunales en la interpretación de las leyes. *United States v. Healy*, 160 U. S. 136. *People v. Dayton* 55 N. Y. 377. *Wetmore v. State*, 55 Ala. 198. *United States v. A. G. S, R. R. Co*. 142 U. S. 615. *United States v. Stone* 124 U. S. 236. Y la misma doctrina podría sostenerse, en un grado menor, desde luego, en aquellos casos en que la interpretación ó el uso ó costumbre se hayan seguido solamente por un tiempo relativamente corto. Por consiguiente, es digno de observar que el Attorney General, que en aquella fecha era el Jefe Ejecutivo del departamento judicial de esta Isla, y como tal, miembro del Consejo Ejecutivo, y Presidente de la Comisión de lo Judicial, en aquella cámara de la Asamblea Legislativa, en una opinión dirigida á los Jueces de paz de la Isla, con fecha 3 de Julio de 1902, expresó la doctrina de que ambos Códigos empezaron á regir simultáneamente, y que ninguno de ellos tenía aplicación á hechos ó delitos cometidos con anterioridad á la fecha en que empezaron á regir, y que ninguno tenía efecto retroactivo, y que ambos eran aplicables á todos los casos que surgieran por virtud de hechos y delitos cometidos después de la hora en que empezaron á regir.

Tanto los Tribunales como los abogados que constituyen el foro de esta Isla se allanaron, en aquella época, unánimemente, á esta opinión del Attorney General, y nunca se planteó la cuestión, ni se sometió á la consideración de este Tribunal, hasta la vista de este caso de *habeas corpus*. Por espacio de quince meses ha procedido el Tribunal bajo la teoría y práctica enunciada por el Attorney General Harlan, y consentida por los Tribunales y el foro, resolviendo algunos de los más importantes casos que posiblemente podían

time was the executive head of the Judical Department of
this island, and as such a member of the Executive Council,
and Chairman of the Judiciary Committee, in that branch
of the Legislative Assembly, announced in an opinion issued
to the justices of the peace of the island on the third day
of July 1902, the doctrine that both codes went into effect
simultaneously, and that neither of them applied to acts or
offenses done or committed prior to the time at which they
took effect, and that neither was retroactive, and that both
governed all cases which should arise on acts done and
offenses committed after the hour at which they became
effective.

In this opinion of the Attorney-General, the Bench and
the Bar of the island at that time unanimously acquiesced
and the question was never raised nor presented to this
court until the trial of this case on *habeas corpus*. For
fifteen months the court has proceeded upon the theory
and practice announced by Attorney-General Harlan, and
acquiesced in by the Bench and the Bar, disposing of some
of the most important cases which could possibly arise,
involving the liberty, property and civil rights of the
citizens of this island. If the view contended for and
presented here by counsel for applicant is correct, then
great injustice has been done in numerous cases, through a
misconstruction of the law.

It is sometimes said that the doctrine of *stare decisis*
has no application to criminal law; but this assumption
cannot be supported by the current of authority in courts
most highly esteemed for wisdom and learning. "The
importance, in a general sense, of stable laws induces a
conservative opposition to vacillation in even the methods of
administering justice, and has made the rule of *stare decisis*
universally applicable; in some cases even imperative, in
others at least a precept". *Sutherland on Statutory Con-
struction*, section 314 citing *In re Warfield*, 22 Cal. 51;

someterse á su consideración, en los que estaban comprendidos los derechos civiles y la libertad y propiedad de los ciudadanos de esta Isla. Si la opinión formulada y sostenida por el abogado del peticionorio, en este caso, es correcta, entonces se ha cometido gran injusticia en numerosos casos, á causa de una mala interpretación de la ley.

Algunas veces se ha afirmado que la doctrina de *stare decisis* no tiene aplicación alguna al derecho penal; pero esta suposición no está sostenida por la serie de autoridades constituidas por aquellos Tribunales más altamente estimados por su sabiduría é ilustración. "La importancia, en sentido general, de leyes estables, produce un espíritu de oposición moderada contra dudas y vacilaciones que puedan ocurrir aún en los modos de administrar justicia y ha hecho que la regla de *stare decisis* sea de universal aplicación; teniendo en algunos casos carácter imperativo, y siendo, en otros, por lo menos, un precepto". Sutherland sobre interpretación estatutaria, sección 314, en la que se citan los casos de *In re. Warfield* 22 Cal. 51; *Boker v. Lorrilard* 4 N. Y. 261; *Rogers v. Goodwin* 2 Mass. 477; y otros casos numerosos.

Pero examinemos el verdadero fundamento de este argumento. Para hacer esto debemos continuar investigando qué interpretación debe darse á las leyes que fueron aprobadas por la Asamblea Legislativa, que sustituyeron el sistema penal vigente bajo la soberanía española, por el sistema americano que trataron de implantar.

La regla primordial de interpretación, aplicable á todos los documentos, aún los estatutos, consiste en determinar y seguir la intención de las partes que los otorgaron. Si se trata de interpretar un contrato el Juez debe colocarse en el lugar de las partes contratantes, averiguar las circunstancias que las rodearon, ver las cosas bajo el mismo punto de vista y examinarlas en la misma forma en que lo hicieron las partes contratantes cuando otorgaron el contrato. Del mismo modo es permisible y necesario que el Tribunal trate de determinar las circunstancias que rodearon la Legislatura, la historia de la legislación, cuál fuera el derecho antiguo, cuál fuera el defecto ó mal que se tratara de remediar, y cuál el remedio que se trató de aplicar por medio del cam-

*Boker v. Lorrilard*, 4 N. Y. 261; *Rogers v. Goodwin*, 2 Mass. 477; and numerous other cases.

But let us examine into the real foundation of this argument. In order to do so we must continue to inquire what construction shall be given to the laws which were passed by the Legislative Assembly, changing the criminal system in force under Spanish domination to the American system, which it sought to establish.

The cardinal canon of construction applicable to all written instruments, including statutes, is to ascertain and follow the intention of the parties by whom the instrument was made. If it is a contract that is sought to be construed, the judge endeavors to put himself in the place of the contracting parties, to inquire into their surroundings, to look at things through the same glasses, and to turn them over just as the contracting parties did when making the contract. In the same way it is permissible and necessary that the court should endeavor to ascertain the circumstances surrounding the legislature, the history of the legislation, what was the old law, what was the defect or mischief sought to be corrected, and what was the remedy sought to be applied by the change. *Soon Hing v. Crowley*, 113 U. S. 703. *King v. Gallun* 109, U. S. 99. In other words, the intention of the legislature is to be sought for and when found, is to be complied with strictly, and given full force and effect. *Wisconsin Cent. R. R. Co. v. Forsythe*, 159 U. S. 46; *United States v. Clarke*, 8 Pet., 436. The intention of the law-makers is the essence of the law. Courts are bound to seek out the intention of the Legislature and when that is apparent are bound to respect and enforce it; and they cannot more disregard that intention in the exposition of a penal statute than of any other. *Territory v. Commissioners*, 8 Mont. 409, 411; *Foster v. Blount*, 18 Ala. 687. If the intention is expressed in plain and unmistakable words, then no construction is necessary, but if it is obscure and the

bio. *Soon Hing v. Crowley* 113 U. S. 703. *King v. Gallum*
109 U. S. 99. En otras palabras, ha de buscarse la inten-
ción de la Legislatura. y cuando se determine, debe cum-
plirse rigurosamente, y dársele completa fuerza y vigor.
*Wisconsin Cent. R. R Co. v. Forsythe* 159 U. S. 46. *United
States v. Clarke* 8 Pet. 436. La intención de la Legislatura
es lo que constituye la esencia de la ley. Los Tribunales
están obligados á buscar la intención de la Legislatura, y
cuando está determinada, vienen obligados á respetarla y
hacerla cumplir; y ellos no pueden desatender esa intención
cuando se trate de interpretar un estatuto penal, como no lo
pueden hacer con respecto á cualquier otro estatuto. *Terri-
tory v. Commissioners* 8 Mont. 409 & 411. *Foster v. Blount*
18 Ala. 687. Si la intención está expresada en palabras cla-
ras é inequívocas, entonces no es necesario interpretación
alguna, pero si es obscura, y las circunstancias del caso hacen
difícil su determinación, entonces es necesario aplicar las re-
glas bien conocidas de interpretación, que han sido estable-
cidas por edades, y llegar así á la verdadera intención que
tuvo la Legislatura al implantar la ley.

El Tribunal puede tomar en consideración judicialmente
las condiciones de la Isla y su historia, la constitución de su
Asamblea Legislativa, el sistema de legislación bajo el cual
ha estado viviendo su pueblo, y con el que estaba familiari-
zado, su liberación de la monarquía española, y el estableci-
miento de instituciones libres, así como todos los hechos
referentes á la historia, jurisprudencia ó legislación de Puer-
to Rico, hasta la fecha en que se implantó el sistema ameri-
cano de leyes penales. *Phillipis v. Detroit* 111 U. S. 604.
*King v. Gallum* 109 U. S. 99. *United States v, Perot* 98 U. S.
428. *Conger v. Weaver* 6 Cal. 548. *Sparrow v. Strong* 3
Wall 97. *Turner v. Patton* 49 Ala. 406.

No carecemos de muchas guías de carácter judicial que
puedan ayudarnos, así, á determinar la intención de la
legislatura y á penetrar en la mente legislativa. En la dis-
cusión de una cuestión semejante, el Tribunal Supremo de
California correctamente dice:

"Aunque la función del Tribunal no es la de hacer la ley, sin embargo,
en la interpretación de la misma, debe prestar consideración á su contexto, y

circumstances of the case render it difficult to determine, then it is necessary to apply the well known rules of construction which have been established for ages, and thus arrive at the real intention that the legislature had in making the law. The court can take judicial notice of the condition of the island and its history, the composition of its Legislative Assembly, the system of laws under which its people had been living, and with which they were familiar, their liberation from the Spanish Monarchy, and the establishment of free institutions, and all of the facts connected with the history, jurisprudence or legislation of Porto Rico up to the date on which the American system of criminal laws was introduced. *Phillips v. Detroit,* 111 U. S. 604; *King v. Gallum,* 109 U. S. 99; *United States v. Perot,* 98 U. S. 428; *Conger v. Weaver,* 6. Cal. 548; *Sparrow v. Strong,* 3 Wall 97; *Turner v. Patton,* 49 Ala. 406.

We are not left without many judicial guides in thus ascertaining the legislative intent and fathoming the legislative mind. The Supreme Court of California very aptly observes while discussing a similar question:

"While it is not the business of the court to make a statute, yet in the interpretation thereof it must look at the context and the result that would follow, in order to arrive at the intent. A literal construction will not always obtain, particularly when such construction leads to an absurdity". *Stockton School District v. Wright,* 134 Cal. 68. *People v. Craycroft,* 111 Cal. 544.

It is well settled that a statute may be construed even contrary to its literal meaning when a literal construction would result in an absurdity or inconsistency. *Carpy v. Dowdell,* 129 Cal. 245; *Merced Bank v. Cassacia,* 103 Cal. 645; *Sutherland on Stat. Cons.,* section 323.

The reason and intention of the lawgiver will control the strict letter of the law in interpreting the same, when to adhere to the strict letter would lead to an injustice or absurdity. *Carpy v. Dowdell,* 129 Cal. 246.

al resultado que habría de seguirse, para poder llegar á la intención. No siempre ha de prevalecer una interpretación literal, especialmente cuando tal interpretación conduce á un absurdo. *Stockton School District v. Wright* 134 Cal. 68. *People v. Craycroft* 111 Cal. 544.

Es doctrina bien establecida que un estatuto puede ser interpretado aun en forma contraria á su significación literal en los casos en que una interpretación literal condujera á un resultado absurdo ó incompatible. *Carpy v. Dowdell* 129 Cal. 245. *Merced Bank v. Cassacia* 103 Cal. 645. Sutherland on Stat. Cons. section 323.

La razón ó intención que tuviera el legislador ha de prevalecer sobre la estricta palabra de la ley al interpretar la misma, en los casos en que una interpretación ajustada estrictamente á su letra condujera á una injusticia ó á un absurdo. *Carpy v. Dowdell* 129 Cal. 246.

Se presume que la Legislatura trató de impartir á sus decretos un significado tal que les diera efecto y vigor. La interpretación debe ser racional. *People v. Curry* 130 Cal. 94. Black sobre interpretación de leyes 112.

La interpretación debe tender rigurosamente á evitar consecuencias absurdas y hasta inconvenientes; porque la intención de la Legislatura ha de cumplirse, y no puede suponerse que produzca tales consecuencias. La interpretación no ha de poner en riesgo, inútilmente, los grandes intereses públicos. *People v. Curry* 130 Cal. 94 y 95. Bishop's Written Law 19.

Con respecto á una de las principales cuestiones referentes á la historia contemporánea del país, en la época en que estos códigos fueron aprobados, debemos siempre tener presente que la Asamblea Legislativa, en su Cámara Baja, se componía de treinta y cuatro puertorriqueños y un americano, y en la Cámara Alta, de cinco puertorriqueños y seis americanos. El objeto perseguido era sin duda alguna substituir todo el sistema español de leyes penales, entonces vigentes en la Isla, por un sistema americano completo, no solamente en cuanto se refería á los delitos y castigos, sino con respecto al procedimiento por el cual tales casos debían instituirse, proseguirse y juzgarse. Según hemos dicho anteriormente, bajo el régimen español había dos códigos en

It is presumed that the legislature intended to impart to its enactments such a meaning as would render them operative and effective. Interpretation must be reasonable. *People v. Curry*, 130 Cal. 94. *Black on Interpretation of Laws*, 112.

The interpretation should lean strongly to avoid absurd consequences, and even inconvenience; for the legislative meaning is to be carried out, and it cannot be supposed to be any of these. Great public interest will not needlessly be put in hazard by the interpretation. *People v. Curry*, 130 Cal. 94, 95. *Bishop's Criminal Law*, 19.

In regard to one of the principal matters bearing on the current history of the country, at the time these codes were passed, we must constantly bear in mind that the Legislative Assembly was composed in the lower house, of thirty four Porto Ricans and one American, and in the upper house of five Porto Ricans and six Americans. The object in view was beyond all doubt to change the entire Spanish system of criminal law then in force in the island into a complete American system, not only in so far as crimes and punishments were concerned, but in regard to the procedure by which such cases were to be instituted, conducted and tried. Under the Spanish régime, as we have said before, there were two codes in force, one called the Penal Code, the other the Code of Criminal Procedure, both working in harmony, one designating crimes and prescribing their punishment, and the other establishing rules for conducting criminal cases. In the Spanish codes the line between the substantive and the adjective law is not very strictly drawn, but they are to some extent mingled in each code.

In changing the criminal laws of the island to the American system, the Code Commission thought it wise, as has been stated, to follow almost literally the Penal Code of California, which is substantially the same as that in force in Montana, Idaho, and other Western States; but for convenience, the Commission reported what in California is a

vigor, uno que se llamaba el Código Penal y otro el. Código de Enjuiciamiento Criminal, funcionando ambos armónicamente determinando uno los delitos y prescribiendo su castigo, y estableciendo el otro las reglas para tramitar las causas criminales.  En los Códigos españoles la línea divisoria entre el derecho substantivo y el adjetivo no está rigurosamente establecida, estando ambos, hasta cierto punto, mezclados en cada código.

Al substituir las leyes penales de la Isla por el sistema americano, la Comisión Codificadora estimó conveniente, según se ha expresado, seguir casi literalmente el Código Penal de California, que esencialmente es igual á los que están vigentes en Montana, Idaho y otros Estados occidentales; mas por razón de conveniencia, la Comisión formuló como dos códigos distintos, lo que en California es un solo código, titulándolos el Código Penal y el Código de Enjuiciamiento Criminal, respectivamente.  Es este un asunto que puede este Tribunal tomar en consideración judicialmente y es propio de ser considerado en relación con esta discusión. United States v. Perot 98 U. S. 428. United States v. Webster; Davies 39; Fosdick v. Perrysburg 14 Ohio St. 472. Estos dos códigos fueron discutidos durante todo el término de la Legislatura, fueron referidos á una comisión conjunta de ambas Cámaras, y considerados por la misma, de la cual era presidente el Attorney General y, finalmente, fueron pasados y aprobados el día primero de Marzo de 1902, para tomar efecto cuatro meses más tarde.  El texto original de estos códigos fué redactado desde luego en el idioma inglés.  Se hizo necesario traducirlos al español, y era también necesario, antes de que pudieran ponerse en vigor, que fueran estudiados y entendidos por los Jueces de las distintas Cortes, muchos de los cuales no están familiarizados con el idioma inglés, y por los miembros del Foro, la gran mayoría de los cuales son naturales de la Isla.  Para un cambio tan radical á penas eran suficientes cuatro meses para esta preparación. .

El abogado del peticionario trata de circunscribir la opinión del Tribunal á los términos exactos en que aparece redactado el Código de Enjuiciamiento Criminal, sin hacer

single code, as two different codes, entitled the Penal Code and the Code of Criminal Procedure, respectively. This is a matter of which this court can take judicial notice and is proper to be considered in discussing this subject. *United States v. Perot* 98 U. S. 428; *United States v. Webster; Davies*, 38; *Fordick v. Perrysburg*, 14 Ohio St. 472. These two codes were under discussion during the entire term of the Legisla-ture, were referred to and considered by a joint committee of the two Houses, of which the Attorney–General was Chairman, and were finally passed and approved on the 1st of March, 1902, to take effect four months thereafter. The original of these codes was of course in the English language. It was necessary to translate them into Spanish, and also obviously requisite that they should be studied and under-stood by the judges of the different courts, many of whom are unacquainted with the English language, and by the members of the bar, the great majority of whom are natives of the island, before they could be put into operation. Four months time was scarcely sufficient for this preparation for so great a change.

Counsel for the applicant seeks to confine the view of the court to the exact language of the Code of Criminal Proce-dure without glancing for a moment at the Penal Code, insisting on a strict construction of the repealing clause of the statute and of the article putting the code in force on the 1st of July, 1902. This seems to us altogether too narrow a road in which to travel in order to arrive at the truth. Acts in *pari materia* should be construed together. *C. M. & St. P. Ry Co. v. United States*, 127 U. S. 406; *Frost v. Wenie*, 157 U. S. 46; *Reich v. Smythe*, 13 Wallace 162.

It is true that it is a general rule that penal statutes must be construed strictly, and in cases of doubt in favor of the accused, but they are not to be construed so strictly as to defeat the obvious intention of the legislature. *American Fur Co. v. United States*, 2 Pet. 367; *United States v. Athens*

referencia alguna al Código Penal, insistiendo en una rigurosa interpretación de la cláusula derogatoria contenida en el estatuto y del artículo por el cual se dispone que el Código empezará á regir el primero de Julio de 1902. Nos parece que este camino, que debemos recorrer para llegar á la verdad, es completamente demasiado estrecho. Las leyes *in pari materia* pueden interpretarse conjuntamente. *C. M. & St. P. Ry. Co. v. United States* 127 U. S. 406. *Frost v. Wenie* 157 U. S. 46. *Reich v. Smythe,* 13 Wallace 162.

Es verdad que es regla general que los estatutos penales deben ser rigurosamente interpretados, y en casos de duda, á favor del acusado, pero no han de interpretarse tan rigurosamente que anule la intención manifiesta de la Legislatura. *American Fur Co. v. United States* 2 Pet. 367; *United States v. Athens Armory* 35 Ga. 344; *Walton v. State* 62 Ala. 197; *Keller v. State* 11 Md. 525 y los casos citados en ellos. Los Tribunales deben tomar en consideración las diferentes partes de un estatuto, y la legislación vigente *in pari materia;* y si es posible, deben todas armonizarse; y si el sentido es dudoso, debe darse tal interpretación, si puede ser, que no sea incompatible con los principios generales de derecho, con respecto á los cuales puede presumirse que la Legislatura no tuvo intención de cambiar ó desatender. *Manuel v. Manuel.* 13 Ohio State, 458, 465; es doctrina especialmente establecida que un estatuto debe ser considerado en relación con todo el sistema del cual forma parte. *Smith v. People* 47 N. Y. 330; *Whitcomb v. Rood* 20 Vt. 49. *McDougal v. Dougherty* 14 Ga. 674: *Hays v. Richardson* 1 Gill & J. 366· *Noble v. State* 1 Greene 325.

El Tribunal Supremo de Montana, al discutir la interpretación que debía darse á un simple estatuto, citó y consideró tres leyes con respecto á la misma materia, aunque fueron promulgadas en distintos años cada una, y entre otras cosas dice :

"Si consideramos todas las leyes en conjunto nadie puede dudar lo que significan. Todos estos estatutos tratan de enmendar el artículo 585 de la división quinta de los Estatutos Revisados; y esa intención se manifiesta claramente si ejerciéramos las facultades naturales de percepción de las que todo ser racional está dotado. *Lane v. Missoula County* 6 Montana 482; *Carratoers v. Madison County* 6 Montana 483."

*Amory,* 35 Ga. 344; *Walton v. State,* 62 Ala. 197; *Keller v. State,* 11 Md. 525, and cases cited therein. Regard must be had by the courts to all parts of a statute, and to the concurrent legislation in *pari materia;* and the whole should, if possible, be made to harmonize; and if the sense be doubtful, such construction should be given, if it can be, as will not conflict with the general principles of law, which it may be assumed the legislature would not intend to disregard or change. *Manuel v. Manuel,* 13 Ohio State, 458, 465; it is specially well settled that a statute must be considered with reference to the whole system of which it forms a part. *Smith v. People,* 47 N. Y. 330; *Whitcomb v. Rood,* 20 Vt. 49; *MacDougal v. Dougherty,* 14 Ga. 674; *Hays v. Richardson,* 1 Gill & J. 366; *Noble v. State,* 1 Greene 325.

The Supreme Court of Montana, in discussing the construction to be given in a single statute cited and considered three laws in regard to the same subject although enacted years apart from each other and among other things says:

"If we take the whole law together, nobody can doubt what it means. All these statutes mean to amend section 585 of the fifth division of the Revised Statutes; and that intent is clearly apparent if we will but exercise the ordinary faculties of perception with which all reasonable men are endowed." *Lane v. Missoula County,* 6 Montana 482; *Carruthers v. Madison County,* 6 Montana 483.

It clearly appears to us to have been the intention of the Legislature, in view of previous history and all the facts and circumstances surrounding that body in January and February 1902, that the codes should go into effect gradually, and with the least possible friction, and it was accordingly, for that reason among others, provided in the criminal code that it should have no force as to acts committed prior to the date on which it took effect. No such express provision, it is true, is contained in the Code of Criminal Procedure. But the two codes are so very intimately connected, being, in the original statute from which they were taken, one

En vista de la historia anterior y de los hechos y circuns- tancias que rodearon la legislatura en Enero y Febrero de 1902, nos parece manifiesto que la intención de la misma fué que los Códigos empezaran á regir gradualmente, con el menor rozamiento posible, y por consiguiente, por esa razón, entre otras, se dispuso en el Código · Penal que no tendría efecto con respecto á hechos cometidos con anterioridad á la fecha en que empezó á regir. Es verdad que tal disposición expresa no está contenida en el Código de Enjuiciamiento Criminal. Pero ambos códigos están tan íntimamente rela- cionados, que constituyen una sola ley en el estatuto origi- nal del cual fueron tomados, refiriéndose ambos á crímenes y á *misdemeanors;* tomados en conjunto tienden claramente á establecer un sistema completo de leyes penales para la Isla, en lugar del sistema completo anterior, pareciendo im- posible poder separar uno del otro. Ellos son, *y eran,* dos grandes ruedas pertenecientes á una misma maquinaria, con los dientes de la una encajando armónicamente en aquellos de la otra, para obtener así los fines de la justicia.

El sistema español es tan diferente del americano, tanto con respecto á los delitos definidos en el mismo, como con respecto á la forma del juicio y castigos establecidos, que pa- rece casi imposible aplicar el procedimiento americano al Código Penal español. Con arreglo al derecho español mu- chos dilitos tienen la consideración de injurias de carácter personal, y son perseguidos únicamente por la persona inju- riada, como acusadora privada, mientras que en el Derecho americano tales hechos tienen la consideración de delitos contra el Estado, y son perseguidos por los funcionarios pú- blicos nombrados con ese fin.

Hay otros delitos, como el sacrilegio y faltas contra la autoridad, que son reconocidas por el Derecho español, pero completamente desconocidas para el americano, y otros tan distintos en su definición y castigo que deben considerarse completamente omitidos en el Código Penal americano. También ciertos castigos que se imponían bajo el sistema español pudieran considerarse inusitados bajo el americano; tal es, por ejemplo, el destierro de determinada ciudad ó pueblo, y el garrote como medio de infligir la pena de

legislative act, both referring to crimes and misdemeanors, and taken together plainly intended to establish a complete system of criminal law for the island, replacing a former complete system, that it seems impossible to separate one from the other. They are, as it were, great wheels in the same piece of machinery, with the cogs of the one working harmoniously in those of the other, and thus acomplishing the ends of justice.

The Spanish system is so different from the American, both in the crimes defined therein, and in the mode of trial and punishment prescribed that it seems almost impossible to apply the American procedure to the Spanish Penal Code. Many offenses under the Spanish law are considered to be personal injuries, and are prosecuted solely by the injured individual as a private prosecutor, while under the American law they are considered as crimes against the State, and are prosecuted by the public officers assigned to that duty.

There are other offenses, like sacrilege and disrespect to authorities, which are known to the Spanish law but are altogether unknown to the American, and others are so different in their definition and punishment that they must be considered as altogether unknown to the American Penal Code. Punishments which were inflicted under the Spanish system might be deemed unusual under the American; such for instance as banishment from a certain town or city and the *garrote* as a means of inflicting the death penalty. The universal division of crimes into felonies and misdemeanors, established in the common law and adopted generally under the American Codes, is entirely unknown to the Spanish law.

It appears then absolutely necessary to enforce the Spanish Penal Code by the Spanish Code of Procedure, and the American Penal Code by the American Code of Procedure; to undertake to administer the American Code of Procedure

muerte.  La división universal de delitos entre *felonies* y *misdemeanors*, establecida en el derecho común y adoptada. generalmente en los códigos americanos, es completamente desconocida en el Derecho español.

Por consiguiente, parece ser absolutamente necesario dar vigor al Código Penal español, por medio del Código procesal español, y al Código Penal americano, por medio del Código procesal americano; tratar de aplicar el Código procesal americano en la persecución, juicio y castigo de delitos ó *misdemeanors* reconocidos como tales por el Código Penal español, sería algo así como tratar de hacer funcionar una locomotora de vía ancha en un camino de hierro de vía estrecha; los resultados, en ambos casos, deben ser seguramente desastrozos.

Indudablemente que estas fueron algunas de las razones que determinaron al Attorney General y á los Tribunales de Puerto Rico, con la general adquiescencia del Foro, á considerar que la cláusula de reserva contenida en el Código Penal era aplicable así mismo al Código de Enjuiciamiento Criminal; y tal interpretación está completamente justificada por las decisiones de los Tribunales americanos.

Creemos que esta regla, de seguir la intención de la legislatura, se aplica tanto á la interpretación de varios estatutos, considerados conjuntamente, como á la interpretación de un simple estatuto, considerado separadamente.  En cualquiera de estos casos el objeto es determinar cual es la ley; y si hubiera varios estatutos sobre la misma materia y las disposiciones fueran contradictorias, debe ser el objeto del Tribunal determinar cual de ellos pensó la legislatura que había de prevalecer.  En la interpretación de estatutos, no se exige á los Tribunales que cierren sus ojos á lo que es perfectamente evidente para cualquier ser racional.  Al contrario, los deberes de la función judicial les exige que ejerciten con la mayor amplitud sus facultades para determinar la ley y hacer cumplir los estatutos. *Lane v. Missoula County* 6 Mon. 479; *Thorpe v. Schooling* 7 Nev. 17; *Carruthers v. Madisson County* 6 Mon. 483.

Durante el argumento oral se hizo un esfuerzo para demostrar que no se había de dar al Código de Enjuicia-

in the prosecution, trial and punishment of crimes or misdemeanors under the Spanish Penal Code would be somewhat like attempting to run a broad-gauge locomotive on a narrow-gauge railroad track; the result in both cases must certainly be disastrous.

These are some of the reasons, doubtless, which influenced the Attorney–General and the Courts of Porto Rico, with the universal acquiescence of the Bar, to regard the saving clause contained in the Penal Code as applicable alike to the Code of Criminal Procedure; and such construction is fully warranted by the decisions of the American courts.

We believe this rule of following the intention of the legislature applies as well to the construction of several statutes considered together as it does to the interpretation of a single statute, considered alone. The object in either case is to ascertain what is the law; and if there are several statutes on the same subject contradictory in their provisions it must be the purpose of the court to find out which the legislature intended should prevail. Courts are not required, in the construction of statutes, to shut their eyes to what is perfectly evident to all other reasonable men. On the contrary they are required by every obligation of the judicial office, to the utmost extent of their faculties, to discern the law, and to carry the statutes into execution. *Lane v. Missoula County,* 6 Mont. 479; *Thorpe v. Schooling,* 7 Nev. 17; *Carruthers v. Madison County,* 6 Mont. 483.

In argument some pains were taken to elaborate the point that the Code of Criminal Procedure was not to be given an effect which would class it as an *ex post facto* law, though it was contended at the same time that a statute of procedure could change the method of trial and the courts having jurisdiction of offenses committed prior to its passage, without incurring the ban generally claimed to exist against laws having a retroactive effect. No one for a moment thinks of giving the new code of procedure a retroactive effect, unless

miento criminal un efecto que pudiera clasificarlo entre las leyes *ex post facto*, aunque se alegó, al mismo tiempo, que una ley de procedimiento podía cambiar la forma de juicio y los Tribunales con jurisdicción para conocer de delitos cometidos con anterioridad á su aprobación, sin estar sujeta á las objecciones que generalmente se dicen existir contra las leyes que tienen efecto retroactivo. Nadie trata por un momento de dar al nuevo Código procesal un efecto retroactivo, á no ser que sea ésta la actitud asumida por aquellos que alegan que tiene aplicación á todos los hechos ó delitos, ya se hayan cometido con anterioridad al 1 de Julio de 1902, ó con posterioridad á esa fecha. Indudablemente que no puede considerarse que los Tribunales de esta Isla han dado tal carácter á ese código, al limitar sus efectos, hasta ahora, á hechos, delitos y crímenes cometidos después de la fecha en que empezó á regir. El abogado del peticionario, en este caso, está tratando de darle efecto retroactivo en cuanto sea necesario para hacerlo aplicable á este caso, que tiene referencia á un delito cometido el día 10 de Diciembre de 1901. Por consiguiente, el caso de *King v. State* (107 U. S. 221), que hace referencia á las leyes *ex post facto* no tiene aplicación alguna á este aspecto del caso sometido á nuestra consideración.

En relación con esta discusión puede admitirse, por ser un principio bien establecido por la jurisprudencia de los Tribunales, que una ley de procedimiento puede regular la persecución de delitos cometidos con anterioridad á su aprobación, ya sea ó no más onerosa para el acusado, pero esa admisión no cambia ni afecta en lo más mínimo la cuestión á resolver bajo el punto de vista en que la ha considerado este Tribunal. Si se resuelve que el nuevo Código procesal es de aplicarse solamente á hechos cometidos con posterioridad á la fecha en que empezó á regir, todas las cuestiones referentes á las leyes de carácter retroactivo ó leyes *ex post facto*, son impertinentes.

El prisionero no puede alegar que el castigo impuesto á su delito ha sido reducido ó mitigado por legislación subsiguiente, toda vez que el Código Penal prescribe clara é inequívocamente que "Todo acto ú omisión que empezare

such is the position assumed by those who contend that it applies to all acts or offenses, whether done or committed prior to the 1st day of July, 1902, or subsequently thereto. Certainly the courts of this island in heretofore limiting its operation to acts, offenses and crimes committed after the date at which it became a law cannot be considered as having done so. Counsel for this applicant are seeking to make it retroactive in so far as necessary to apply to this case, which relates to a crime committed on the 10th day of December, 1901. Then the case of *King v. State*, 107 U. S. 221, treating of *ex post facto* laws, has no application to this phase of the case under consideration.

It may be admitted in this discussion, for it is a principle well established by the decisions of the courts, that a statute of procedure may govern in the prosecution of crimes committed prior to its passage, whether it is more onerous upon the accused or not; that concession does not change nor affect in the least degree the question at issue under the view taken of it by this court. If the new code of procedure is held to apply only to acts committed subsequent to the date at which it became effective all questions of retroactive or *ex post facto* laws become immaterial.

The prisoner cannot claim that the punishment of his crime has been lightened or ameliorated by subsequent legislation for it is provided in the Penal Code clearly and unequivocally that "Any act or omission commenced prior to the establishment of this code (12 o'clock noon, 1st July 1902) may be inquired of, prosecuted and punished in the same manner as if this code had not been passed". (Section 558, last paragraph, of Penal Code.) The act of which the prisoner was convicted was done months before the meeting of the legislature which passed the code, and of course long anterior to the date mentioned.

It is worthy of remark in this connection, that, if the new Penal Code could be applied to the offense of which Mau-

antes de la promulgación de este Código, (12 del día del primero de Julio, 1903) podrá investigarse, perseguirse y castigarse como no se hubiera aprobado dicho Código". Artículo 558, último párrafo, del Código Penal. El hecho del cual fué convicto el prisionero fué cometido meses antes de la reunión de la Legislatura que aprobó el Código, y, desde luego, con mucha anterioridad á la fecha mencionada.

Es digno de mencionar en relación con este punto, que si se pudiera aplicar el nuevo Código Penal al delito del cual fué declarado culpable Mauleón, los hechos probados constituyen un caso de acometimiento con circunstancias agravantes, definido y penado en el artículo 237 del mismo, con prisión en la penitenciaría que no excederá de diez años, ó en la cárcel por un término que no excederá de dos años, ó por multa que no exceda de cinco mil pesos, ó por ambas penas. Aparece, por consiguiente, "que la última condición de ese individuo sería peor que la primera". Indudablemente que no tiene razón alguna para alegar que el castigo impuesto á su delito ha sido mitigado por el nuevo Código Penal. Sus propios actos le han convertido en criminal, sea cualquiera el Código por el cual se le juzgue.

Consideremos y examinemos punto por punto la alegación escrita presentada en este caso por el distinguido abogado que sostiene que se ha interpretado erróneamente el Código de Enjuiciamiento Criminal, en el gran número de casos resueltos durante los últimos quince meses, de acuerdo con esta opinión.

Después de citar el último párrafo del artículo 558 del Código Penal, según se ha transcrito anteriormente, el abogado continúa y dice: "Ciertamente no puede haber discusión alguna con respecto á la intención de la legislatura al promulgar como ley el párrafo anterior". Es posible que no la haya, y si no la hay, debe resolverse que la Asamblea ha querido decir precisamente lo que ha dicho y no otra cosa.

Pero veamos como pueden *investigarse* los delitos. ¿De acuerdo con qué Código; el Código Penal ó el Código de Enjuiciamiento Criminal, que al mismo tiempo define tales procedimientos? Indudablemente con arreglo al último.

león was adjudged guilty, the facts proven make out a case of aggravated assault, defined and punished in article 237 thereof, by imprisonment in the penitentiary for not exceeding ten years, or in jail not exceeding two years, or by fine not exceeding five thousand dollars, or both. It thus appears that "the last state of that man would be worse than the first". He certainly has no reason to claim that the punishment of his offense has been mitigated under the new criminal code. He has by his own acts made himself a felon under whichever code he may be judged.

Let us take up and examine, point by point, the written argument here presented by the distinguished counsel who insists that an erroneous interpretation has been given to the Code of Criminal Procedure, for the last fifteen months in the scores of cases decided in accordance with these views.

After quoting the last paragraph of section 558 of the Penal Code as set out above, counsel proceeds to say: "Certainly, there can be no controversy as to the intention of the Legislature, when it enacted the above paragraph into law". Possibly not, and if not, the Assembly must be held to mean just what was said and nothing else.

But let us see how crimes are "inquired of". In accordance with which code, the Penal Code or the Code of Criminal Procedure, which at the same time defines such proceeding? Clearly the latter.

A "criminal action" must be instituted by an "information" prepared by the prosecuting attorney in the name of the People of Porto Rico, in the proper district court; and the rights of the defendant are carefully safeguarded in every particular. Minute regulations are prescribed throughout the Code of Criminal Procedure and especially in sections 2 to 11 inclusive. *q. v.* But this paragraph of the Penal Code referred to involves also the method of *procedure;* for it prescribes how the prior crimes shall be *prosecuted.* We are

Toda *acción criminal* deberá establecerse por medio de una *acusación*, preparada por el Fiscal en nombre de El Pueblo de Puerto Rico y presentada á la Corte de Distrito correspondiente; y los derechos del acusado quedan cuidadosamente protegidos en todo sentido. Disposiciones detalladas están prescritas en el Código de Enjuiciamiento Criminal y especialmente en los artículos 2 al 11 inclusive, q. v.

Pero este párrafo del Código Penal mencionado, comprende también la forma del procedimiento *(procedure);* toda vez que prescribe en que forma han de *perseguirse* los delitos cometidos con anterioridad. Estamos perfectamente satisfechos en aceptar la definición de la palabra *procedimiento (procedure)* que ha dado el Tribunal Supremo de los Estados Unidos, toda vez que no puede haber una autoridad mejor ó más alta. El abogado la cita tomándola de la opinión en el caso de King, 107 U. S. pp. 231 y 232.

Dice así:

"La palabra *procedimiento* (procedure), como expresión legal, no ha sido bien entendida, y no se encuentra en absoluto en el Diccionario de Legislación de Bouvier, que, en este país, es la mejor obra de esta naturaleza. Afortunadamente, un distinguido tratadista de derecho penal, en América, la ha adoptado como título de una obra que consta de dos tomos: *Bishop* sobre Procedimiento Criminal. En su primer capítulo trata de definir lo que significa la palabra procedimiento *(procedure)*. Dice así: "Sección 2. La palabra *procedimiento* es tan amplia en su acepción que raras veces se usa en nuestros textos como un término de arte. Comprende en su significado lo que se encuentra comprendido en los tres términos técnicos siguientes: Alegaciones, Pruebas y Práctica *(Pleading, Evidence* and *Practice)*. Y al definir la palabra práctica, en este sentido, dice: "Significa la palabra aquellas reglas de carácter legal que regulan el curso del procedimiento para traer las partes ante el Tribunal y prescriben el curso que ha de seguir el Tribunal después que las partes han comparecido ante él"; y con respecto á la palabra pruebas *(evidence)*, dice: Como parte del procedimiento "significa aquella regla de carácter legal que nos sirve para determinar qué testimonio debe ser admitido y cuál rechazado, en cada caso, y qué valor ha de darse al testimonio que se admita".

Después de escrita esta opinión, el Sr. Rawle ha revisado el Diccionario de Derecho de Bouvier y ahora la palabra *procedimiento (procedure)* se encuentra definida elaboradamente, en la forma siguiente:

perfectly willing to accept the definition of *procedure* given
by the Supreme Court of the United States; for there can be
no better or higher authority. Counsel quote it from the
opinion in the *King* case, 107 U. S. pp. 231 and 232. It
reads as follows:

"The word "procedure" as a law term, is not well understood, and is not
found at all in Bouvier's Law Dictionary, the best work of the kind in this
country. Fortunately a distinguished writer on criminal law in America
has adopted it as the title to a work of two volumes: Bishop on Criminal
Procedure. In his first chapter he undertakes to define what is meant by
procedure. He says: "Section 2. The term 'procedure' is so broad in its
signification that it is seldom employed in our books as a term of art. It
includes in its meaning whatever is embraced by the three technical terms,
pleading, evidence and practice." And in defining practice, in this sense,
he says: "The word means those legal rules which direct the course of
proceeding to bring parties into the court and the course of the court after
they are brought in; and evidence, he says, as part of procedure, "signifies
those rules of law whereby we determine what testimony is to be admitted
and what to be rejected in each case, and what is the weight to be given to
the testimony admitted."

Since this opinion was written Mr. Rawle has revised
Bouvier's Law Dictionary and now the term "Procedure" is
elaborately defined therein as follows:

"The methods of conducting litigation and judicial proceedings. It might
be termed by way of illustration, the mechanism of the law, as distinguished
from jurisprudence, which is the science of the law."

The lexicographer then quotes the definition above taken
from the 107 U. S. Reports, and discusses the matter at
some length. (2 Bouvier's Law Dictionary, 764.)

How then, is "a criminal action prosecuted"? As set
forth in the Code of Criminal Procedure, and not in the
Penal Code. We must next enquire in regard to the
"punishment". The word "punishment" is also defined
satisfactorily by Bouvier as follows:

"Some pain or penalty warranted by law, inflicted on a person for the

"Los métodos empleados para tramitar los litigios y procedimientos judiciales. Puede calificarse, por vía de ilustración, el mecanismo de la ley, para distinguirlo de la jurisprudencia, que es la ciencia del derecho."

El lexicógrafo cita entonces la definición arriba transcrita del tomo 107, U. S. Reports, y discute el punto con alguna extensión. Diccionario de Derecho de Bouvier, tomo 2, pag. 764.

¿En qué forma, pues, se "prosigue una acción criminal"? En la forma expresada en el Código de Enjuiciamiento Criminal, y no con arreglo al Código Penal. Debemos ahora discutir lo concerniente á los *castigos*. La palabra *castigo* (*punishment*) se encuentra satisfactoriamente definida por Bouvier en la forma siguiente:

"Una pena establecida por la ley ó impuesta á una persona por sentencia y orden de un Tribunal legal, por la comisión de un delito ó *misdemeanor*, ó por la omisión de algún acto cuya ejecución sea exijida por la ley. Diccionario de Derecho de Bouvier, tomo 2, pag. 795."

Las cuestiones relativas á los castigos ó las penas caen claramente dentro de los límites del derecho substantivo, ó del derecho científico, más bien que dentro de aquellos señalados al derecho adjetivo, ó sea el mecanismo de la legislación penal. ¿En qué forma se castiga un delito ó falta? El método se encuentra establecido en el Código de Enjuiciamiento Criminal, aunque la extensión y naturaleza del castigo están definidas, limitadas y prescritas en el Código Penal. Por consiguiente, el párrafo citado del artículo 558, C. P. se refiere, por tres veces, tanto al Código de Enjuiciamiento Criminal como al Código Penal. El objeto del Código de Enjuiciamiento Criminal es definir y establecer los métodos de investigar, perseguir, y castigar un crimen, falta ó misdemeanor, aunque la definición del delito mismo, y el castigo que haya de imponérsele, se encuentren establecidos en el Código Penal. ¿Por qué, pues, no se incluyó este párrafo en el Código de Enjuiciamiento Criminal en lugar del Código Penal, ó además de haberse incluído en este último? Sencillamente porque en la ley original, en las leyes de California, de las cuales copiaron sus códigos los codificadores, ambos códigos constituían una sola ley de la Legislatura, y al dividir la ley en dos partes, para ajustarla

commission of a crime or misdemeanor, or for the omission of an act required by law, by the judgment and command of some lawful court." *2 Bouvier's Law Dictionary*, page 795.

The matter of punishment clearly falls within the province of the substantive law of the science rather than the adjective law or the machinery of criminal legislation. How is a crime or offense punished? The method is defined in the Code of Criminal Procedure though the extent and nature of the punishment is defined, limited, and prescribed by the Penal Code. Then the paragraph quoted from section 558, P. C. has three times as much reference to the Code of Criminal Procedure as it has to the Penal Code. It is the office of the Code of Criminal Procedure to define and set forth the method of inquiring of, prosecuting and punishing a crime, offense or misdemeanor, though the definition of the crime itself and the punishment attached are to be found in the Penal Code. Then why was not this paragraph included in the Code of Criminal Procedure, instead of, or in addition to, the Penal Code? Simply because in the original act, in the laws of California, from which the codifiers copied their codes, both codes constitute a single act of the Legislature, and in dividing the act into two parts, to conform to the Spanish forms in use, the matter was evidently overlooked.

But it makes no difference in the effect to be given the paragraph, in what code it appears. It is as much a part of the criminal law in the one as in the other. The intention of the legislature is just as apparent from the words, and must be given the same effect by the courts, under the well established rules of construction, no matter in which code the words appear. Then the offense of which the applicant was convicted, having been committed on the 10th day of December, 1901, was properly "inquired of, prosecuted and punished" in the same manner as was practiced before the passage of the Penal Code. (See Penal Code section 558).

á las formas españolas en uso, indudablemente que no se tuvo presente este hecho.

Mas para los efectos que hayan de darse á tal párrafo, no importa en cual de los Códigos esté contenido. Forma tanta parte del Derecho Criminal por encontrarse contenido en el uno como en el otro. De su contexto es tan aparente la intención de la Legislatura, que de acuerdo con las reglas bien establecidas de interpretación, los Tribunales deben darle el mismo efecto, no importa en cual de los códigos aparezca consignado. Por consiguiente, habiéndose cometido el delito del cual fué declarado culpable el peticionario, el día 10 de Diciembre de 1901, fué debidamente "investigado, perseguido y castigado de la misma manera que" se hacía antes de la aprobación del Código Penal. Véase el artículo 558 del Código Penal.

La siguiente cuestión se ha planteado: "¿quién tiene conocimiento de que dos leyes de procedimiento se encuentren vigentes, al mismo tiempo, en determinado Estado ó Tribunal?" Desde luego que esto no podría concebirse ó practicarse en relación con la misma causa criminal. Pero con respecto á diferentes casos, es perfectamente posible y practicable, en cualquier Estado, ó en cualquier Tribunal de competencia ordinaria, administrar dos ó tres, ó más, sistemas distintos de legislación, al mismo tiempo, y en otros tantos casos diferentes. En los Estados Unidos vemos hacer esto diariamente en los asuntos civiles, en los casos en que el mismo Tribunal tiene jurisdicción en ley y en equidad, y en una hoja del Docket ó Registro desestima el caso de una persona, mientras que en la otra, y con los mismos hechos, dicta sentencia á su favor. Esto ocurre en relación con el mismo Tribunal, la misma causa y los mismos hechos.

Correctamente expresa el abogado que "el Tribunal en ningún caso ha de interpretar violentamente una ley en sentido contrario á los principios generales, cuando tal interpretación no sea necesaria para darle efecto, ni esté justificada por la ley misma". Indudablemente que no. El fin de los Tribunales es seguir por todos los medios los principios generales y no contradecirlos. Uno de estos es que las leyes no tendrán efecto retroactivo á no ser que así lo declaren expresamente. Art. 1 del Código Penal. Este mismo principio es uno de los, no solamente generales, sino

The question is asked, "whoever heard of two procedure acts being in force in a given State or court at the same time?" Certainly this cannot be conceived or practiced in regard to the same criminal case. But in regard to different cases, it is perfectly possible and practicable, in any state, for any court of ordinary capacity, to administer two or three, or more different systems of law at the same time in as many different cases. We see it done in civil cases every day in the United States, when the same court administers law and equity, and dismisses a man's case on one side of the docket and gives him a judgment on the same state of facts, on the other. That occurs in the same court, in the same case, and on the same facts.

Counsel correctly remarks that "The court will not in any case force a construction of a statute which is contrary to general principles when such an interpretation is not at all needed to save the law, nor called for by the act itself". Most certainly not. It is by all means the aim of the court to follow and not to contradict general principles. One of these is that statutes shall not have a retroactive effect, unless expressly so declared. (Penal Code section 1). This same principle is one of not only general but almost universal application. It is found in the Spanish Penal Code which was in force in this island when the codes now under consideration were being framed by the Legislature. (Old Penal Code articles 20 and 21.) It is also well known and was constantly applied in the Civil Code known to the Spanish system. The old Civil Code says in article 3 : "Laws shall not have a retroactive effect unless otherwise prescribed therein". Then the Legislature of Porto Rico, being familiar with this principle, surely had this in mind when they were engaged in so important a work as formulating a system of criminal laws by which this island should in the future be governed. This is one of the most important circumstances surrounding the legislators during the passage of these laws, and must be considered by any court in arriv-

de más universal aplicación. Se encuentra en el Código Penal Español, que estaba vigente en esta Isla en la época en que los códigos sometidos ahora á nuestra consideración se formulaban por la Legislatura. Artículos 20 y 21 del antiguo Código Penal. Es también un principio bien conocido y de constante aplicación en el Código Civil que forma parte del sistema español. El antiguo Código Civil dice en su artículo 3: "Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario". Por consiguiente, estando familiarizada la Legislatura de Puerto Rico con este principio, indudablemente que lo tuvo presente cuando trabajaba en obra tan importante como la de formular un sistema de legislación penal que había de gobernar esta Isla en lo futuro. Esta es una de las circunstancias más importantes que rodearon al legislador durante la aprobación de estas leyes, y toda Corte debe tomarla en consideración para llegar á la intención de la Legislatura expresada en los términos de una ley.

La cuestión referente á la mitigación del castigo por legislación subsiguiente, no puede surgir en este caso, porque el castigo está determinado por el Código Penal, y es indudable que en éste se consigna la cláusula de reserva anteriormente transcrita, impidiendo así que se reclamen los beneficios que pudieran derivarse de las penas más benignas contenidas en los nuevos Códigos. Por esta razón nada importa que la palabra española *lesiones* equivalga á las palabras *battery* y *woundings*, ó que sean de significación distinta. El antiguo Código Penal determina el castigo que ha de imponerse por el delito de lesión y el nuevo Código Penal no lo ha modificado, sino que expresamente lo ha dejado en vigor, de donde se sigue que toda discusión sobre este punto es impertinente. El delito de lesiones, cometido por el prisionero, fué "investigado, perseguido y castigado" de la misma manera que si el nuevo Código no se hubiera aprobado; cumpliéndose así lo dispuesto en la ley, no sólo en su letra, sino en su espíritu y objeto.

Se ha hecho referencia á la influencia que esta resolución pueda tener sobre los litigios civiles que estén pendientes ó puedan estarlo, en los Tribunales insulares. Si tales consideraciones pudieran tener influencia alguna en la resolución de un caso de *habeas corpus*, se contestaría suficientemente esta indicación manifestando que no nos parece que exista

ing at the legislative intent in the language of any law.

The question of amelioration of punishment by a subsequent law cannot arise in this case because the punishment is fixed by the Penal Code, and this undoubtedly contains the saving clause heretofore quoted, and thus cuts of all claims to any benefit from the milder penalties of the new codes. For this reason it matters not whether the Spanish word *lesiones* means *battery woundings*, or something else. The punishment for *lesiones* is prescribed in the old Penal Code and not interfered with, but expressly continued in force by the new one, hence the whole discussion on that point is irrelevant. The offense of *lesiones* committed by the prisoner was "inquired of and prosecuted and punished" in the same manner as if the new code had not been passed; and thus the law was followed, not only in its letter, but in its spirit and intent.

Reference has been had to the influence which this decision may have upon civil litigation pending or impending in the insular courts. If such consideration could have any influence in the decision of a case on *habeas corpus* a sufficient reply to this suggestion would be that such tendency towards influencing civil cases does not seem to us to exist. The construction of the Civil Code and the Code of Civil Procedure are to depend on their own terms and on the well known rules applicable to such laws. The fact that this court regards the entire body of criminal law, as contained in the codes, as a single system, has no reference to the construction to be put on civil acts, now on the statute books or hereafter to be passed. The entire system of jurisprudence in this island is being changed as rapidly as possible from the ancient Spanish to the modern American plan; and this change need not and cannot be hastened by forcing a construction of a criminal statute so as to make it take a retroactive effect never calculated by the codifiers, nor intended by its framers.

In view then of all the circumstances under which these

ninguna tendencia que pueda ejercer influencia alguna en los asuntos civiles. La interpretación del Código Civil y del Código de Enjuiciamiento Civil ha de depender de sus propios términos y de las reglas bien establecidas que sean de aplicación á tales leyes. El hecho de que este Tribunal considere como un solo sistema todo el conjunto de leyes penales contenidas en los códigos, no tiene referencia alguna á la interpretación que pueda darse á las leyes de naturaleza civil, que se encuentren ahora en los libros de estatutos, ó que en adelante se aprobaren. Todo el sistema de jurisprudencia establecido en esta Isla se está cambiando tan rápidamente como es posible, sustituyéndose el antiguo sistema español por el sistema moderno americano; y no es necesario apresurar este cambio, ni puede ser apresurado, dando para ello una interpretación forzada á un estatuto penal para hacerlo retroactivo en sus efectos, carácter que nunca intentaron darle los codificadores, ni aquellos que lo formularon.

En vista, pues, de todas las circunstancias bajo las cuales fueron aprobados estos Códigos, prestando cuidadosa consideración á todas las resoluciones de los Tribunales de apelación, y á las doctrinas formuladas por los tratadistas anteriormente citados, me veo obligado á establecer la conclusión de que aunque el Código de Enjuiciamiento Criminal, que había de regir en esta Isla, fué pasado y aprobado el primero de Marzo de 1902, y empezó á regir, según sus propios términos, el día primero de Julio de ese año, derogando todas las otras leyes incompatibles con el mismo, sin embargo, no hizo referencia alguna, ni trató de regular ó cambiar en modo alguno, el procedimiento que se refería y regulaba los casos perseguidos, ó los hechos cometidos, con anterioridad á las doce del día, de dicho día y fecha; sino que, estando esos casos exentos de los efectos del Código Penal, fueron asimismo excluidos también de los efectos del Código de Enjuiciamiento Criminal.

Siendo esta mi opinión con respecto á este caso, y habiendo examinado detenidamente la solicitud presentada por el prisionero interesando la expedición del auto de *habeas corpus*, y la petición de excarcelación contenida en la súplica de la misma, estoy conforme con mis compañeros en la denegación del remedio solicitado, estimando que fué justa y debidamente declararado culpable de acuerdo con el pro-

codes were passed, taking into careful consideration all the decisions of the appellate tribunals and the doctrines laid down by the text writers hereinbefore quoted, I am forced to the conclusion that the Code of Criminal Procedure, passed and approved for this island on the 1st day of March, 1902, while it took effect according to its terms on the 1st day of July, of that year, and repealed all other laws in conflict with it, yet did not bear upon or control, or change in any way the procedure relating to and governing cases which were prosecuted, or acts which were committed prior to twelve o'clock noon, on said day and date; but that they being excepted from the force of the Penal Code, were thereby also in effect excepted from the scope and purview of the Code of Criminal Procedure.

Taking this view of the case, and having carefully examined the application made by the prisoner for the writ of *habeas corpus*, and his prayer for enlargement, I concur with my associates in the refusal of the relief prayed for, believing that he was justly and properly convicted under the procedure applicable to his case, and that he cannot be considered as unjustly imprisoned or restrained of his liberty; and hence that he is not entitled to the benefit of the writ of *habeas corpus*.

The application should be denied and the prisoner remanded to the penitentiary to complete his term of imprisonment.

cedimiento aplicable á su causa, y que no puede considerarse que se encuentre injustamente detenido ó cohibido de su libertad; y por consiguiente que no tiene derecho á los beneficios del auto de *habeas corpus.*

Dede denegarse la solicitud y debe el prisionero nuevamente ser enviado á la penitenciaría para que complete el término de prisión que le fuera impuesta.